## RAKESTRAW v. LANIER.

1. A contract in restraint of trade, unlimited as to time and the enforcement of which literally as made would, in certain contingencies likely to arise and which must necessarily have been in contemplation of the parties, result in needlessly oppressing one of them without affording any corresponding benefit or protection to the other, is unreasonable and should not be enforced.

2. Of this nature is a contract for the formation of a medical partnership to continue for twelve months, but which might be dissolved by either of its two members on thirty days notice to the other, whereby one of them stipulates that, in consideration of the advantages and benefits that will flow to him by reason of the formation of such partnership, he "agrees that in the event said firm shall at any time hereafter be dissolved, he will not locate or engage in the practice of medicine, surgery, or obstetrics," at a named town or at any place within fifteen miles radius of a specified drug-store therein, unless he shall first have obtained the written consent of the other party to the contract.

3. A distinction exists between that class of contracts binding one to desist from the practice of a learned profession, and those which bind one who has sold out a mercantile or other kind of business, and the good will therewith connected, not to again engage in that business. In the former class there should be a reasonable limit as to time, so as to prevent the contract from operating with unnecessary harshness against the person who is to abstain from practicing his profession at a time when his so doing could in no way benefit the other contracting party. In the latter class such limit is not essential to the validity of the contract, but the restraint may be indefinite. In the case of *Swanson* v. *Kirby*, 98 *Ga.* 586, there was a purchase of property and of a business connected with the same, and necessarily the good will pertaining to that business was involved. That case, therefore, belongs to the latter of the above-mentioned classes, and is distinguishable from the present case, which belongs to the former.

Argued January 19, — Decided April 13, 1898.

Injunction. Before Judge Gamble. Screven county. December 9, 1897.

On August 10, 1895, Lanier and Rakestraw, physicians residing in the town of Oliver, formed a partnership for the practice of medicine, surgery, and obstetrics. The articles of copartnership contained, among other stipulations, the following: "In consideration of the advantages and benefits that will flow to said Rakestraw by reason of the formation of said firm and partnership business, he hereby agrees that in the event said firm shall at any time hereafter be dissolved, he will not locate or engage in the practice of medicine, surgery, or obstetrics at said town of Oliver, or at any place within fifteen miles radius from the drug-store of said Lanier, unless he shall first have obtained the written consent of said Lanier. And in the event the said Rakestraw shall violate the terms of this article, the said Lanier shall be entitled to sue and recover, as his damages, the sum of one thousand dollars annually from

said Rakestraw so long as he shall violate the terms of this article; said sum of $1,000 being agreed now between the parties hereto as damages and not as a penalty. This partnership shall continue for the space and term of twelve months from the date when signed by the parties hereto, unless sooner dissolved. This partnership may be dissolved by either member giving to the other in writing a notice of his intention to withdraw from the partnership; and at the expiration of thirty days from the service of such notice by either member on the other, said firm shall be dissolved." On June 3, 1896, Lanier wrote to Rakestraw as follows: "Under the provisions of our contract a thirty days notice is required to dissolve the same, and you are hereby notified that on the third day of July next you may consider the contract between us in the practice of medicine ended. This will enable you to make all collections of your one-third interest in all accounts now on our books, or what may become due within thirty days, at which time I shall expect a partner in the practice here. If you desire, you can fully withdraw from all office practice and drug-store duties from date. I shall expect to abide by the contract in the letter and in the spirit in which it was written." The partnership was accordingly dissolved.

After the dissolution Rakestraw continued to reside in the town of Oliver and to practice medicine, surgery, and obstetrics therein and within the radius of fifteen miles referred to in the contract. On September 18, 1897, Lanier wrote to Rakestraw at Oliver as follows: "Under our contract you are now due me $1,000, which you will pay at once or discontinue practice in this place." Rakestraw refused to comply with this demand, and on October 26, 1897, Lanier brought to the superior court his petition setting out the foregoing facts and alleging, that Rakestraw was still engaged in the practice of medicine, surgery, and obstetrics in the locality mentioned, contrary to his contract, in violation of equity and good conscience, and in fraud and damage of petitioner; that by reason of this breach of the contract, and under the express terms thereof, defendant became indebted to him in the sum of $1,000 at the expiration of the year from the date of the dis-

solution, and is still so indebted; that the defendant is hope-
lessly insolvent; that petitioner has no adequate remedy at
law; that the injury complained of is continuing in its nature,
and will necessitate a suit at the expiration of each year; and
that by reason of the bad faith of the defendant, and the na-
ture of petitioner's business, his age and his circumstances, the
injury is irreparable in damages. Waiving discovery, he
prayed a judgment against defendant for $1,000, a perpetual
injunction, and until the final hearing a temporary injunction,
restraining the defendant from engaging in the practice of
medicine, surgery, or obstetrics at the town of Oliver or any
place within a radius of fifteen miles from the drug-store of
petitioner, unless he shall have first obtained the written con-
sent of petitioner. The defendant demurred and answered,
and, at the hearing of the application for temporary injunction,
urged that the petition set forth no ground for injunction or
other relief against him; that the stipulation in the contract
upon which the petition was based is against public policy
and illegal, and is not valid or enforceable against the defend-
ant; that it is not a reasonable or proper stipulation within the
meaning or the requirements of the law, and is unjust, unfair,
and against good conscience; that it is without sufficient con-
sideration to support it, and is lacking in mutuality, and does
not put the plaintiff under such obligation as would make the
agreement of the defendant valid and binding; and that under
the facts the plaintiff was not entitled to the injunction or
other relief. It is unnecessary to set forth the allegations of
the answer, or the conflicting evidence upon the issues of fact.
The court ordered that a temporary injunction as prayed for
be granted, unless a bond conditioned to pay the eventual con-
demnation-money should be given by the defendant.

*Denmark, Adams & Freeman*, for plaintiff in error.
*Gignilliat & Stubbs* and *Oliver & Overstreet*, contra.

LITTLE, J. Counsel for plaintiff in error, both by his argu-
ment and brief, rests his case on the proposition, that the
petition on which the judge below granted an injunction, in
default of bond, sets forth no cause for relief, because the con-

tract sought to be enforced is not a legal and binding instrument. Hence, this court is called upon to determine the question whether the contract which is set out in the foregoing report is void as contrary to public policy, or whether the same is valid and therefore to be enforced. This question is to be settled by the rules of law governing contracts made in restraint of trade; and in seeking to make application of such rules, we find ourselves furnished with precedents which seem to be authority for all phases of the question, and rulings distressingly in conflict. The plaintiff in error submits that the terms of the contract render it invalid because it is harsh and unreasonable; it is against public policy; it is not a reasonable or proper contract within the meaning or the requirements of the law; that it is without consideration to support it. If either one of these contentions is established, then, as we understand the law applicable to contracts of this character, the courts must refuse to enforce the contract relied upon, because agreements which are unlawful, without regard to the manner of execution, never in law become contracts, although frequently denominated and dealt with under the name of illegal contracts. We can not, within reasonable limits, undertake to reconcile conflicting opinions in treating of contracts in restraint of trade, nor cite the authorities which bear upon the different constituent elements which render such contracts valid, or the want of which make them void, for the reason that the first are irreconcilable and the latter inharmonious. It must suffice that we shall in this case present the rules which we consider established by the most satisfactorily reasoned cases of other jurisdictions and the adjudications of our own court.

Mr. Clark in his work on Contracts says, on authority, that at one time in England it was considered that a contract was contrary to public policy if it placed any restraint at all on a man's right to exercise his trade or calling, but that gradually exceptions were recognized until at last the court, in a leading case, Mitchell *v.* Reynolds, 1 P. Wms. 181, established the rule that a contract in restraint of trade, upon consideration which shows it was reasonable for the parties to enter into it, is good; "that whenever a consideration appears to make it a proper

and useful contract and such as can not be set aside without injury to a fair contractor, it ought to be maintained," etc. By reference to that case, we find the conclusion of the court to be that· "In all restraints of trade, where nothing more appears, the law presumes them bad; but if the circumstances are set·forth, that presumption is excluded, and the court is to judge of those circumstances and determine accordingly, and if, upon them, it appears to be a just and honest contract, it ought to be maintained." Some question has arisen as to the proper construction of our code which declares that: "Contracts in general in restraint of trade are void" (Civil Code, § 3668), and as to whether the proper interpretation of these words would have the effect to declare that contracts in general restraint of trade are void, or that contracts generally in restraint of trade are void. Speaking for myself, I interpret the language to mean that contracts generally in restraint of trade are void. The words of this section were not codified from any act of the General Assembly, but the same language appeared in our first Code (1863), and ran without change through successive editions and revisions up to and including the Civil Code of 1895; from which I infer that if the words were not intended to be accepted as written, subsequent codifiers, if not subsequent legislatures, would, by change or amendment, more clearly have expressed a different meaning. But I take it that the words, "contracts in general in restraint of trade are void," meaning that, generally, contracts in restraint of trade are void, were incorporated into the codification of laws in force in this State as expressing a recognized legal principle sanctioned by the highest authority.

In Ross v. Sadgbeer, 21 Wend. 168, Mr. Justice Bronson says: "The law starts out with the presumption that a contract in restraint of trade is void." The same rule is stated in Pollock on Contracts, side page 311; is recognized in the leading case from 1 P. Wms., supra, and the principle laid down in Clark on Contracts, 447. Besides, such a construction seems to be in harmony with the policy of the law in this State. To one class of persons at least—corporations—contracts of this character are forbidden when they tend to lessen competition in their re-

spective businesses (Constitution of 1877, Civil Code, § 5800); and various acts of the legislature seem to indicate such a policy to exist. However this may be, it is certain that contracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods and a. competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as to themselves; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance prices, and expose the public to all the evils of monopoly. Clark on Contracts, 446. Against evils like these, wise laws protect individuals and the public by declaring all such contracts void. Alger v. Thacker, 19 Pick. 51. Since the early legislative history both of England and this country, statutes have been of force looking to the prevention of monopoly and the interdiction of restraints upon the exercise of business, trades, or professions, and in no instance has a contract which imposed an unreasonable restraint upon the same, in the eye of the judiciary, been upheld. And the question of the reasonableness of the restriction is one of law for the court. 1 Wharton on Contracts, § 433; Bishop on Contracts, § 517; Benjamin on Sales, § 527; 2 Pomeroy's Eq. Jur. § 934; Mallan v. May, 11 Mees. & W. 653; Wiley v. Baumgardner, 97 Ind. 66. In determining whether such restriction is reasonable, the court will look alone to the time when the contract was entered into. Rannie v. Irvine, 7 Man. & G. 969; Cook v. Johnson, 47 Conn. 175.

It is, however, satisfactorily established that, as a matter of law, such a contract is to be upheld, if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. Clark on Contracts, 446. In some jurisdictions it is held that a contract in restraint of trade, which

is unlimited as to space, is void on its face and will not be enforced. Clark on Contracts, 450, and authorities cited. On the other hand, it has been held that a contract restraining the exercise of a trade or business throughout the Kingdom or State may be reasonable and therefore valid. Rousillon *v.* Rousillon, L. R. 14 Ch. D. 351; Beal *v.* Chase, 31 Mich. 490; Diamond Match Co. *v.* Roeber, 35 Hun, 421. In determining, however, whether such a contract is reasonable, the court will consider the nature and extent of the trade or business, the situation of the parties, and all the other circumstances; and even if the presumption to which we have before referred does not exist against the validity of such contracts, so as to require persons seeking to enforce them to show that they were made upon a sufficient consideration, and that the restrictions they impose are reasonable (Angier *v.* Webber, 92 Am. Dec., note on page 753), yet in law all such contracts are void, if considered only in the abstract, and without reference to the situation or objects of the parties, or other circumstances under or with reference to which they were made; and this, though the pecuniary consideration paid may have been sufficient to support the contract in any other respect, or any ordinary contract for a legal purpose; or even though it may be sufficient in value to compensate the restraint imposed. But if, considered with reference to the situation, business, and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid. The true test, therefore, of the validity of such a contract is, whether it is supported by a sufficient consideration, and whether the restraint is reasonable.

The plaintiff in error contends that the contract under review is without sufficient consideration to support it, and that for this reason it is void. That there must be an actual valuable consideration to support such a contract, and such consideration should be shown on the face of the declaration or com-

plaint, although the contract be under seal, are propositions well established.   Bishop on Contracts, § 126; Metcalf on Contracts, 233; 1 Wharton on Contracts, § 434; Mitchell *v.* Reynolds, 1 P. Wms. 181; Davis *v.* Mason, 5 Term R. 118; Hutton *v.* Parker, 7 Dowl. P. C. 739; Pierce *v.* Fuller, 8 Mass. 223; Weller *v.* Hersee, 10 Hun, 431.   That the consideration must thus be shown, is generally said to be the only exception to the rule that a contract under seal imports a consideration which the party will not be permitted to deny.   Metcalf on Contracts, § 233.   And in earlier times it was held that the consideration must be adequate.   Mitchell *v.* Reynolds, supra; Gale *v.* Reed, 8 East, 80; Young *v.* Timmins, 1 Tyrw. 226.   The courts, however, long since departed from this doctrine; and it may now be taken as settled, that if there is a legal consideration, it will not be inquired whether or not it is adequate, or, in other words, equal in value to the restraint agreed upon.   See authorities cited in note to case of Angier *v.* Webber, 92 Am. Dec. 754.   As was said by Tindal, C. J., in the case of Hitchcock *v.* Coker, 6 Ad. & E. 438: "It is enough that there is actually a consideration for the bargain, and that such consideration is a legal consideration, and of some value."   Accordingly, in the case of Pierce *v.* Fuller, 8 Mass. 223, one dollar was held to be a sufficient consideration for a covenant not to run a stage-coach between given points in opposition to the plaintiff.   The consideration upon which the defendant entered into the contract under review, as expressed, was the advantages and benefits that would flow to him by reason of the "formation of said firm and partnership business."   This, under the authorities cited, is a sufficient legal consideration, in so far as such contracts are dependent on a consideration to be sustained.   The exact value of the consideration the court ought not, and, in the nature of things, can not undertake to measure.   There is nothing in the record of the case which shows such gross inadequacy of consideration as to shock the conscience and amount in itself to evidence of fraud.   See Metcalf on Contracts, 271.

The remaining objections urged against the validity of the contract may all be passed upon in considering the other ques-

tion upon which the validity of the contract depends, namely, is the restraint which it imposes reasonable? While public policy forbids any agreement which unreasonably restrains a person from exercising his trade or business, it is equally true that public policy also requires that the freedom of persons to enter into contracts shall not be lightly interfered with. Clark on Contracts, 447. The contract under consideration imposed a restraint unlimited as to time but limited as to space. We are aware that it has been repeatedly held that where the restraint is otherwise reasonable, the circumstance that it is indefinite as to time will not affect its validity (1 Wharton on Contracts, § 432; Metcalf on Contracts, 232; Benjamin on Sales, § 525; Hitchcock v. Coker, 6 Ad. & E. 438; Pemberton v. Vaughan, 10 Q. B. 87; Catt v. Tourle, L. R. 4 Ch. 654; Cook v. Johnson, 47 Conn. 175; Bowser v. Bliss, 7 Blackf. 344); and that our court in more than one case, which will be presently referred to, held the same doctrine. Nevertheless, if the test of the validity of the contract is, as we have shown it to be, that it must be founded on a valuable consideration, and that the restraint imposed must be reasonable and such as is reasonably necessary to protect the interest of the party in whose favor it is imposed and at the same time not unduly prejudice the interest of the public, it seems to us that the question of time in the restriction imposed can not be arbitrarily said to have no effect on the validity of a contract which, being reasonable in all other respects except in point of time, is, from the circumstances, unreasonable and oppressive as to the latter. See Mandeville v. Harman, 7 Atl. Rep. 37; Keeler v. Taylor, 53 Pa. St. 469. In the case of Hitchcock v. Coker, supra, Lord Denman, construing a contract which imposed a restraint on one who, having entered the service of the plaintiff who was a druggist, agreed that he would not, at any time after leaving such service, engage in the business of a druggist in that town, said: "It is not limited to such time as the plaintiff should carry on business in Taunton, nor to any given number of years, nor even to the life of the plaintiff, but it attaches to the defendant as long as he lives, although the plaintiff may have left Taunton, or parted with his business, or be dead";

and he accordingly held the restraint to be unreasonable and oppressive. That case was reversed on writ of error, but the point of reversal was that a restriction so extensive in point of time was necessary for the protection of the promisee in the enjoyment of the good-will of his trade; and, as we understand the principle ruled in that case, a restriction so extensive is reasonable and not oppressive. when it prevents the destruction of a property right, or interest, or the good-will of a trade or business. See review of the case in Clark on Contracts, 455, 456. The contrary of this doctrine, however, is directly held in 16 R. I. 219.

With conflicting authorities as to the application of the rules for testing the validity of contracts in partial restraint of trade, upon which all agree, we think a clear distinction must be taken between the class of cases binding one who has sold out a mercantile or other kind of business, and the good-will therewith connected, not to again engage in that business within a given territory, and that class of cases binding one to desist from the practice of a learned profession. I can readily perceive that a successor of a merchant, broker, or shopkeeper might reasonably expect to retain the former patronage of the place of business, but fully concur with the views expressed by the court, in the case of Mandeville *v.* Harman, supra, that professional skill, experience, and reputation are things which can not be bought or sold. They constitute part of the individuality of the particular person, and die with him. In that case the court said: "There can be no doubt, I think, that if the complainant was the most distinguished physician of the city of Newark, and had by far the most lucrative practice in that city, and he should be so unfortunate as to die next month or next year, it would be impossible for his personal representative to sell his good-will or practice, as a thing of property distinct from the office which he had occupied prior to his death, for any price; and I think it is equally obvious that, if it were sold in connection with his office, the only possible value which could be ascribed to it would be the slight possibility that some of the persons who had been his patients might, when they needed the services of a physician, go or send there

for the next occupant of the office. The practice of a physician is a thing so purely personal, depending so absolutely on the confidence reposed in his personal skill and ability, that when he ceases to exist, it necessarily ceases also, and after his death can have neither an intrinsic, nor a market value. And if the complainant should make sale of his practice in his lifetime, it is manifest all the purchaser could possibly get would be immunity from competition with him, and, perhaps, his implied approval that the purchaser was fit to be his successor; but it would be impossible for him to transfer his professional skill and ability to his successor, or to induce anybody to believe that he had."

So far as we have been able to examine, the cases which have ruled that if the restraint is reasonably limited as to space, the fact that it is unlimited as to time will not render the agreement void, were cases in which some business or property, or property right, either of goods or good-will, had been sold, and the restriction as to unlimited time was not considered unreasonable, because it affected property rights. Our own court has considered a number of cases involving contracts in restraint of trade, and in some of them held that restraints unlimited in point of time did not render the contracts void; but in every one of such cases, as far as we have examined, a property interest was involved. The first is that of *Holmes* v. *Martin*, 10 *Ga.* 503. In that case Holmes conveyed to Arnold a house and lot in the town of Lawrenceville, with this restriction in the deed: "That the said house and lot shall not be kept by the said Arnold or his assigns as a public tavern or hotel, which right is reserved in said property by said Holmes." In that case the court held this contract to be good, and that contracts in partial restraint of trade only may be supported, provided the restraint be reasonable, and the contract founded on a consideration. In the case of *Mell* v. *Mooney*, 30 *Ga.* 413, no question arose which called for a ruling of the validity of contracts in restraint of trade, the points in the case relating alone to pleading. In the case of *Jenkins* v. *Temples*, 39 *Ga.* 655, it appeared that Jenkins had bought of Temples an entire stock of groceries and confectioneries at very high

prices; and Temples had agreed that he would use all of his influence for Jenkins with his former customers, and bound himself not to deal in any of said articles at Spring Place until January, 1869. Temples violated the agreement. The court below held the contract to be void, and this court ruled, reversing the judge below, that a party might legally bind himself for a valuable consideration not to conduct a particular trade or business in a particular place for a reasonable and definite period of time. In the case of *Spier* v. *Lambdin*, 45 *Ga.* 319, Lambdin sold to Spier an unexpired lease of the Barnesville Academy, with the consent of the trustees, for the consideration of $475, representing that he wished to abandon school-teaching, and would use his influence for Spier's benefit. The contract was held to be good and enforceable. In the case of *Ellis & Palmer* v. *Jones & Co.*, 56 *Ga.* 504, Ellis & Palmer had purchased a stock of merchandise, consisting of dry-goods, groceries, etc., from Jones & Company, and the storehouse containing the same, together with their customers and good-will. Jones & Company having recommenced business in the same place, Ellis & Palmer filed a bill to enjoin such action. The injunction was refused. It does not satisfactorily appear in the case that Jones & Company covenanted not to engage in the same business.

In the case of *Goodman* v. *Henderson*, 58 *Ga.* 567, the suit was upon a written agreement, whereby Goodman, in consideration of one hundred dollars a month for two years, and a further money consideration, agreed to retire from the business of purchasing green hides, sheepskins, etc., in the Savannah market forever, and that he would use his influence in favor of the purchaser, and sold to him the good-will of the business. This court held in that case, that the limit as to time made no difference if the contract was limited as to space. In the case of *Brewer & Company* v. *Lamar*, 69 *Ga.* 656, there was an agreement to sell a certain proprietary medicine, and the seller agreed never to use or permit his name to be used on any preparation for the same class of complaints for which this medicine was made, and agreed also to surrender his trade-mark and give to the purchasers the exclusive right to sell and manufacture the

same under the old name. The consideration of the purchase was $275. The court held that the contract was in partial restraint of trade and could be enforced. In the case of *Newman* v. *Wolfson*, 69 *Ga.* 764, Newman sold to Wolfson a stock of goods, etc., together with the good-will of the business, for $1,-466, and covenanted not to engage in a like business in that city for a period of five years. The court in this case held that the contract was not unreasonable. In the case of *Swanson* v. *Kirby*, 98 *Ga.* 586, this court held, where one had sold out a given business and contracted not to again carry on the same in a particular locality, that, though unlimited as to time, such a contract, being reasonable and proper when limited as to place and in other respects, was valid. In this case the consideration paid was fifteen hundred dollars, and the property purchased was a membership in the American Ticket Brokers' Association, a burglar-proof safe, desk, typewriter, and other office fixtures. The covenant was not to open a ticket-office in the city of Atlanta without the consent of Kirby. In that case the court held that, while contracts in total restraint of trade were void, where the restraint was partial, reasonable, and founded upon a good consideration, the contract would be enforced. It has never been decided in this State that a covenant between professional men (where no property rights were involved in the contract which imposed the restriction), so extensive in duration as that under consideration in the present case, is valid. As was said by the court in the case of Mandeville v. Harman, supra: "It is one of the natural rights of every citizen of this State to use his skill and labor in any useful employment, not only to get food, raiment, and shelter, but to acquire property; and I think it may be regarded as very certain that the courts will never deprive any one of this right, or even abridge it, except in obedience to the sternest demands of justice."

We test this contract by the rules before referred to, and find it supported by a legal consideration. Being limited as to space, although unlimited as to time, we find that it may properly be classed among contracts in partial restraint of trade. When we seek its terms to ascertain whether it is

reasonable, made to protect the promisee, and not oppressive on the promisor, we find that no money was paid by the promisee and no property sold by the promisor; we find that the promisor, by the nature of the contract, must have rendered service for all the benefits he received; we find that under the terms of this contract, if the promisee, the defendant in error, should remove from the town of Oliver, from the State of Georgia,—if he should become permanently incapacitated, by disease, from continuing the practice of medicine,—if he should die, the promisor in any event would not be at liberty to practice his profession in Oliver, nor within fifteen miles radius of that town. No matter what the changed conditions might be, it was so nominated in the bond that he should not exercise his calling within the territory prescribed. It must be clear, therefore, that the restrictions imposed upon the promisor in this contract were larger than were necessary for the protection of the promisee. Full protection would have been afforded to the latter if the time in which the restraint should apply had been limited to the life of the defendant in error, or to the time in which he was engaged in the practice of his profession in the county of Screven. Had this contract been so limited, it is obvious, from the view which we take of the law, that it could be upheld and would be enforced. But when the terms of the contract prohibit one party from at any time in the future practicing his profession at a given place, without regard to the fact that the other party should not be engaged in the competitive business; without regard to the fact that he may have removed from the county and State in which such territory was located; without regard to the fact of the inability of the party, from age or physical infirmity, to continue his practice, it would seem to be unreasonable, not necessary for the protection of the party in whose favor the restraint was imposed, oppressive to the party restrained, and opposed to the interests of the public; and such being the case, the contract can not be enforced. If it be said that it would be the right of the plaintiff in error, under any of the circumstances we have mentioned, to pray for a modification or rescission of such contract, the reply is that we are not dealing

with such question. We are to construe it as it is written; and so construing it, we hold it to be void and of no binding force and effect.

*The judgment of the court below must be reversed. All the Justices concurring, except Cobb, J., absent.*