23023. McMURRAY v. BATEMAN.

Argued July 13, 1965—Decided September 9, 1965.

250

*Archer, Patrick & Sidener, James H. Archer, Jr., Don H. Sidener, Arnold & Harris, Ross Arnold, Nancy Pat Phillips, Robert B. Harris,* for plaintiff in error.

*Grant, Spears & Duckworth, William H. Duckworth, Jr.,* contra.

QUILLIAN, Justice. The defendant, plaintiff in error here, contends his general demurrer should have been sustained because the contract between the parties, made a part of the petition and upon which the plaintiff's cause is based, is unilateral and unenforceable. A contract is unilateral in the sense that renders it invalid "when one party to it is bound and the other is not, or when one party gets something and the other

nothing." *Lowery Lock Co. v. Wright,* 154 Ga. 867 (1e) (115 SE 801). While "a promise of another is a good consideration for a promise" (*Code* § 20-304), " 'the promise in each instance must be of such a character as to be capable of enforcement against the party making it, as otherwise neither party will be bound. It must be sufficiently definite both as to time and subject matter.' *McCaw Manufacturing Co. v. Felder,* 115 Ga. 408, 411 (41 SE 664). Unless the promises are of such character, the contract based solely on consideration thereof is unilateral and not binding." *Pepsi-Cola Co. v. Wright,* 187 Ga. 723, 727 (2 SE2d 73), and cases therein cited. " 'The test of mutuality is to be applied as of the time the contract is to be enforced; and if the promisee accomplishes the object contemplated, then the promise is rendered valid and binding.' *Hall v. Wingate,* 159 Ga. 630, 652 (126 SE 796)." *Breed v. Nat. Credit Assn.,* 211 Ga. 629, 632 (88 SE2d 15).

These rules above mentioned apply to executory not executed contracts. Measured by the standards they provide, we think the contract was not unilateral, because it imposed reciprocal obligations binding up both parties and stipulated substantial benefits were to flow to each of them. However, we here deal with an executed contract performed by the parties for two years and three months and as to contracts of that nature the rule is pronounced in *Brown v. Bowman,* 119 Ga. 153, 156 (46 SE 410): "In Hammond on Contracts, 683, it is said: 'The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn.' This doctrine is well settled by many adjudged cases cited by the above-named text-writers, and has been fully recognized by this court."

Regarding the contract in the present case, if there had originally been a lack of mutuality in its provisions, the deficiency would have been supplied by performance.

■ The defendant insists his demurrer should have been sustained because the petition disclosed the contract between the

252

parties, reference to which is made in the preceding division, is too incomplete and indefinite to be enforceable. The document was primarily an employment contract and possessed all of the requisites of a contract of that nature expressed in reasonably certain terms. It designated, as we construe it, the defendant's place of employment, the period for which he was employed, the nature of the services he was to render and the compensation he was to receive.

While the contract contains no express promise that the defendant's place of employment would be the Forest Park Clinic and the Georgia Baptist Professional Building, the contract is explicit that he was to come and practice with the plaintiff and that the latter's practice was conducted at the places mentioned. The contract stipulates services, those incident to the practice of medicine and surgery, and that his compensation is to be arrived at according to an understandable formula, which reads: "The overhead for our group, when we are fully staffed, and for similar groups in the United States runs about 50%. We collect about 90% of what is put on the books. Therefore, the 10th of each month you shall receive 50% of the money collected on the work you do or 45% of what you place on the books for the past month. If at the end of the year we can reduce our overhead and raise our percentage of collections you shall, of course, receive an additional check giving you payment in full of all money cleared on your work. In figuring the amount of work you place on the books you shall receive full credit for all office work, (including Lab. and Xray fees) and the same for the occasional home call you might make plus 50% of all patients we (you and I) admit to the hospital for surgery, treatment or diagnosis."

In reaching this conclusion we have considered the epitome of reasons the defendant contends the terms of the contract were incomplete and indefinite. He points out two provisions of the contract as indicative of its incompleteness: (1) "In the event anything arises not covered in this agreement nor already covered by precedent it shall be decided on the basis of the spirit herein contained and the Golden Rule, plus accepted Christian principles." (2) "Trips, vacations, outside study, time off, etc. to be arranged by mutual consent."

The former really has no legal significance. It is merely a statement that the contract may be altered by subsequent agreement of the parties. This is, as a matter of law, generally true of contracts, where the interest of a third party is not involved. The latter provision does not concern the essential elements of the contract, but simply provides that customary details concerning its performance will, from time to time, be determined by mutual consent of the parties. A contract is not usually incomplete because minor details incident to the performance of its terms are left to be agreed upon. This principle is recognized in *Prior v. Hilton & Dodge Lumber Co.*, 141 Ga. 117 (80 SE 559). "A contract of which the obligations are mutually binding upon the parties thereto is not rendered unilateral merely because matters concerning the details of performance are left to the option of one of the contractors." *Seabrook Coal Co. v. Moore*, 25 Ga. App. 613 (2) (103 SE 839); 17 Am.Jur.2d 363, Contracts, § 27.

The defendant further contends that the contract is incomplete because it does not stipulate whether the plaintiff is to provide office space, secretarial services or other facilities for the practice of medicine, and did not define what was meant by "overhead" expenses. We think the letter embodying the contract and the terms of the contract made it clear that the defendant was to practice as the plaintiff's employee and associate at the Forest Park Clinic and this carries with it the inescapable conclusion that he was to have office space, and the use of the clinic's facilities. The term "overhead" is not defined. It was not necessary that the contract define words that are commonly used in the connection of the conduct of business or the practice of professions. "Overhead" has a connotation generally understood. It means those expenses incidental or incident to the practice of a profession. *Rivers v. Atlanta Southern Dental College*, 187 Ga. 720, 722 (1 SE2d 750). It is impossible to stipulate accurately in advance what will constitute such overhead expenses because from their very nature they depend upon contingencies occurring in the course of practice generally not predictable or certain.

But had there been any deficiency in the provisions of the

254

contract, according to the petition it was fully performed over a period of two years and three months. Hence, the contract was, if aught was lacking, made certain and complete. In *Thomas v. Coastal Industrial Services,* 214 Ga. 832 (1) (108 SE2d 328), it is held: "Even though the agreement does not disclose what salary the defendant was to be paid or the length of time he was to be employed by the plaintiff, and despite the fact that the defendant was already employed by the plaintiff at the time the agreement was entered into, mutuality and sufficient consideration to vitalize the ancillary agreement were supplied by performance under the agreement." *Griffin v. Vandegriff,* 205 Ga. 288, 294 (2) (53 SE2d 345); *Breed v. Nat. Credit Assn.,* 211 Ga. 629, 632, supra.

■ The defendant insists his general demurrer should have been sustained because the restrictive covenant the suit is brought to enforce is unreasonable and oppressive in that the scope of the defendant's activities restricted by the covenant is broader than is necessary for the plaintiff promisee's protection. His brief predicates this contention upon the assertion that from the Code definition of what constitutes the practice of medicine "it is apparent that the restrictive covenant in this case would absolutely prohibit the plaintiff in error from practicing medicine or surgery not only as a sole practitioner and/or as a partner with another physician or physicians, but also as an industrial physician, as a Health Department physician for the Federal, State or local governments and as a resident physician seeking further training with a teaching institution."

The crux of the contention is that the covenant was designed solely to prevent the defendant from becoming the plaintiff's competitor, and the covenant as drawn excludes the defendant from non-competitive fields of practice. Hence, the clause is oppressive and unreasonable. We have read the covenant and compared it with the provisions of *Code* § 84-901 which state: "The terms 'practice of medicine,' 'to practice medicine,' 'practicing medicine,' and 'practice medicine,' as used in this Chapter, are hereby defined to mean holding one's self out to the public as being engaged in the disagnosis or treatment of disease, defects or injuries of human beings, or the suggestion, recommen-

dation or prescribing of any form of treatment for the intended palliation, relief or cure of any physical, mental or functional ailment or defect of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever, or the maintenance of an office for the reception, examination and treatment of persons suffering from disease, defect or injury of body or mind." The definition seeks to encompass the practice of surgery. The practice of medicine as defined in the Code section and as restricted by the covenant is competitive and its enforcement necessary to the promisee's protection; provided it is for no other reason invalid. In this connection it will be observed similar covenants in the cases of *Rakestraw v. Lanier,* 104 Ga. 188 (30 SE 735, 69 ASR 154), and *Burdine v. Brooks,* 206 Ga. 12 (55 SE2d 605), were upheld.

■ The defendant further maintains his demurrer should have been sustained because the restrictive covenant, to which reference has been made, was patently oppressive and unreasonable in that it embraces more territory and is for a longer period of time than is necessary for the plaintiff promisee's protection.

The territorial limitation of the covenant was, according to precedents set by this court, not too broad if the territory included was that throughout which the plaintiff generally practiced, although not necessarily in every part of the area included (*Orkin Exterminating Co. v. Mills,* 218 Ga. 340, 342 (127 SE2d 796)), including territory over which he had reasonable prospects of extending his practice. *Hood v. Legg,* 160 Ga. 620, 629 (128 SE 891); *Thomas v. Coastal Industrial Services,* 214 Ga. 832, supra.

The petition alleged: that the plaintiff had built up one of the largest medical practices in Georgia; that he has thousands of patients who reside throughout a geographical area defined as being within a 50-mile radius of Forest Park, including patients in 88 named cities and towns; that a study by him had determined that the majority of new patients came to him on referrals and recommendations of other patients.

A covenant not to practice medicine may be for a much longer time than stipulated in the present contract. In the case of *Burdine v. Brooks,* 206 Ga. 12, supra, a partial restriction

of the practice of medicine in a certain locality was for ten years. We see no rational distinction in so far as the length of time that one may be permitted to continue in the practice and a covenant completely restricting the practice of a learned profession. But if the *Burdine* case left the matter in doubt the case of *Rakestraw v. Lanier,* 104 Ga. 188, 202, supra, held such restrictions may be for the life of the promisee or "to the time in which he was engaged in the practice of his profession" within the territorial limits agreed upon. The restrictive covenant in the present case can not be held oppressive or unreasonable.

■ Finally, the defendant contends the petition discloses the plaintiff had no right to institute the suit. This contention is predicated upon the failure of the petition to allege that the plaintiff did not agree to the defendant's practicing medicine in the restricted area, to allege that "the senior member of the group" did not so agree, and does not allege the identity of the "senior member" nor of whom the "group" consisted.

The contract provides: "In the event of separation you agree not to engage in the practice of medicine or surgery within a radius of 50 miles of Forest Park, Georgia, for a period of three years unless agreed to by me or the senior member of the group in writing at the time of your separation." The condition that the written consent be given is a condition subsequent. *Code* § 20-110. A good example of the effect of a condition subsequent is found in *Scott v. Hall,* 56 Ga. App. 467 (1) (192 SE 920). The right to bring the suit occurred upon the dissolution of the relationship of the parties, subject to be defeated in the event the written consent was given.

However, without regard to the principle stated, the petition alleges the plaintiff fully complied with the contract, and it could be reasonably inferred from the allegation that "the plaintiff has given the defendant written notice that if he continues to violate said restrictive covenant, legal action will be instituted," also contained in the petition, that the consent that the defendant practice within the restricted area was not given.

■ The evidence summarized in the foregoing statement of fact authorized the grant of the temporary injunction.

*Judgment affirmed. All the Justices concur.*