## 41046. RASH v. TOCCOA CLINIC MEDICAL ASSOCIATES.
(320 SE2d 170)

MARSHALL, Presiding Justice.

The appellant, Dr. James R. Rash, is a former member of the appellee partnership for medical practice in Toccoa, Georgia. Article X, Par. II of the articles of partnership, signed by Dr. Rash when he became a member in 1979, provides: "As part of the consideration for

this agreement, the partners hereto agree that if a partner leaves the partnership for any reason he binds himself not to *engage in the practice of medicine or surgery within a radius of twenty-five (25) miles of the City of Toccoa, Georgia, for a period of three years*, unless this provision be waived by the seventy-five per cent vote in writing of all of the partners. All partners further agree that *this restrictive covenant is a material part of these Articles of Partnership and is reasonable as to time and place* since the particular practice of the partnership is such that any of the partners as representatives of the partnership may be required to and do travel to adjoining counties in order to utilize certain special medical and surgical skills which they possess. Therefore, the partnership is doing business in an area within a twenty-five (25) mile radius of the City of Toccoa and if a former partner were to practice medicine or surgery within a twenty-five (25) mile radius and within a three (3) year period from his separation from the partnership, it would work harm to the remaining partners." (Emphases supplied.)

When the appellant gave the partnership the required written notice of his resignation from the partnership effective November 1, 1983, he expressed his intention to open a practice of obstetrics and gynecology in Demorest, Georgia (which is within 25 miles of Toccoa) in January of 1984, and to treat any patients who seek his services, including patients he has treated at the Toccoa clinic. The appellee partnership obtained an injunction which enjoined the appellant from violating the provisions of the articles of partnership quoted hereinabove, from which judgment Dr. Rash appeals.

1. Contracts which are against the policy of the law cannot be enforced, and contracts in general restraint of trade come within such classification. 1983 Ga. Const., Art. III, Sec. VI, Par. V; OCGA § 13-8-2. In determining whether covenants not to compete are such contracts in general restraint of trade, hence unenforceable, the appellate courts of Georgia have consistently held that neither the constitutional nor the statutory provisions pertinent to this subject impose an absolute bar against every kind of restrictive agreement. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (1) (236 SE2d 265) (1977). Some covenants have been upheld and some deemed to be unenforceable. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F2d 1098 (5th Cir. 1981). In general, however, such covenants are scrutinized to determine if they are sufficiently limited in time and territorial effect and are otherwise reasonable, considering the interests to be protected and the effects on both parties to the contract.

There is a line of cases in this state beginning with *Rakestraw v. Lanier*, 104 Ga. 188 (30 SE 735) (1898), which define the bounds of reasonableness in covenants used in contracts involving medical practitioners. In *Rakestraw*, the court struck a covenant in a medical part-

nership agreement because it was unlimited as to time. *McMurray v. Bateman*, 221 Ga. 240 (144 SE2d 345) (1965), involved an employment contract in which one physician employed another. The employee agreed "not to engage in the practice of medicine or surgery within a radius of 50 miles of Forest Park, Georgia for a period of three years . . ." This court upheld the granting of an injunction, holding that the territorial limitation was not overly broad in that the territory included was that throughout which the plaintiff generally practiced or over which he had reasonable prospects of extending his practice, and that the three-year time limitation was valid, as much less restrictive than that earlier approved in *Burdine v. Brooks*, 206 Ga. 12 (55 SE2d 605) (1949).

Then, in *Raiford v. Kramer*, 231 Ga. 757 (204 SE2d 171) (1974), this court considered a lower court's denial of an injunction. The covenant there prohibited the employee from practicing ophthalmology in the counties of Fulton, Clayton, Cobb, DeKalb and Gwinnett for a period of two years. After holding that the question of whether the restraints imposed by such a contract are reasonable is a question of law for determination by the court, the determination was made that these restraints were reasonable as to time and territory and, therefore, the trial court erred in denying the injunction sought.

In *Carroll v. Harris*, 243 Ga. 34 (252 SE2d 461) (1979), this court dealt with an employment contract wherein a chiropractor employed another chiropractor with a covenant which forbade the employee to establish a practice of chiropractic within a 20-mile radius of Harris Chiropractic Center, within two years of the termination of employment. While this court refused to enforce this contract because of the breach of the employer, it did hold that the restrictions of the agreement "were not larger than necessary to protect the appellee, and were reasonable as to time and territory." Id. p. 35.

2. Counsel for the defendant-appellant seeks to distinguish the aforesaid cases by saying, among other things, that they are outdated in light of a trend toward more strict interpretation in cases (none of which deals with medical partnership agreements) such as *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376 (297 SE2d 473) (1982). This is not, however, an accurate appraisal of the status of the law in this area.

First, *Singer* did not contain a strict territorial limitation, in that the covenant there prohibited the employee (an accountant) from accepting employment or remuneration of any kind from, by, for, or in behalf of any clients of HAW (the employer) "within the territorial limitations of the Atlanta metropolitan area *or any other county (in or out of the state) in which clients of HAW are located.*" (Emphasis supplied.) The enforcement of this covenant would restrict the former employee from a certain amount of practice anywhere in the country,

and would prevent a certain class of persons from seeking his services. On the other hand, the covenant in the present case does not preclude the defendant-appellant from treating *any* patient, including former clinic patients, so long as the treatment occurs outside the 25-mile limit. The covenant here, therefore, contains the absolute territorial restriction which is essential, and which was lacking in *Singer*, supra, and in *Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284 (1) (227 SE2d 251) (1976). "The Supreme Court of Georgia has injected a bright-line test into this area by requiring an express *geographical* description of the territory covered, without reference to the overall reasonableness of the limitation in light of the nature of the profession or trade involved." Merrill Lynch, 658 F2d 1098, supra, p. 1101 (emphasis in original). Moreover, there are other factors which distinguish the case at bar from *Singer*, *Orkin*, etc.

We are dealing here not with an employment contract but with a partnership agreement. Although it does not appear that the appellate courts of this state have had occasion to clearly distinguish between the two types of agreements, there are obvious differences. In a partnership agreement such as the one here, as opposed to an employment agreement, the consideration flows equally among the contracting parties. For example, when an employee agrees to subject himself to possible future restrictions, he does so in exchange for the opportunity to have the job. He really gets nothing other than the opportunity to work in exchange for giving up this aspect of his freedom. On the other hand, here a partner has not only restricted himself, but he has also exacted from each of the other contracting parties a like restriction. When Dr. Rash signed this partnership agreement, eighteen other physicians made the same concession and gave the same assurance to him as he was giving them. Had Dr. Rash decided to stay, and had one of these other doctors who had gained popularity and a good professional reputation while working at the clinic been dissuaded from going into competition with the clinic and taking paying patients with him, Dr. Rash would have been benefited. In a similar case, the Supreme Court of Oregon upheld such a covenant, calling attention to the mutual benefits and burdens involved in such an agreement. McCallum v. Asbury, 393 P2d 774, 776-7 (Ore. 1964).

The next distinction between employment agreements and partnership agreements is that it is generally true in the employer/employee relationship that the employee goes into a transaction such as this at a great bargaining disadvantage. Such would not be expected to be the case in a professional partnership arrangement, and it certainly was not the case here. See Stern, "Enforceability of Restrictive Covenants in Employment Contracts," Ga. State Bar Journal, Vol. 17, No. 3. Medical doctors are in demand. Medical doctors in the field of

obstetrics and gynecology are certainly in demand. This is best evidenced by the fact that Toccoa Clinic Medical Associates paid a "finders fee" in excess of $4,000 in connection with the location of Dr. Rash.

Since the employee who agrees to the covenant may have done so from an inferior bargaining position, and since the covenant may seriously impair his ability to earn a living, the courts have traditionally given greater scrutiny to restrictive covenants within employment contracts, as opposed to such covenants contained in business sales agreements. In the present case, however, neither unequal bargaining status nor impaired ability to earn a living is present. Seen in this context, the covenant does not appear to be unreasonable.

Significantly, certain of our sister states except restrictive covenants contained within partnership agreements from statutes which preclude such covenants in connection with employment agreements. See McCray v. Blackburn, 236 S2d 859 (La. 1970); Akey v. Murphy, 238 S2d 94 (Fla. 1970); Odess v. Taylor, 211 S2d 805 (Ala. 1968). That inequality of bargaining power is a determining factor in judging the reasonableness of a restrictive covenant, is illustrated by our recent decision in *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203 (303 SE2d 746) (1983), in which we stated that "[i]f it appears that [the covenantor's] bargaining capacity was not significantly greater than that of a mere employee, then the covenant should be treated like a covenant ancillary to an employment contract, and '(a)s such, it should be enforced as written or not at all.' " Id. p. 208.

3. If it be argued that the enforcement of this restrictive covenant would be contrary to public policy because it would limit the right of potential patients in the Demorest and Habersham County area to avail themselves of Dr. Rash's services, it can be argued with at least equal conviction that this would afford countless other people in other areas, both in and outside of the state, the opportunity to have a physician in their areas. There is no reason to conclude that the obstetrical and gynecological needs of persons within a 25-mile radius of Toccoa are any greater than in many other areas of this and other states, nor is there any reason to conclude that the need for the appellant's services, in the context of this case, is sufficient to outweigh the law's interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations. See, e.g., Willman v. Beheler, 499 SW2d 770 (Mo. 1973). Moreover, it should be noted in the case at bar that the appellant, in executing the covenant in question, expressly agreed that the covenant was "reasonable" and that breach of the covenant "would work harm" to the partnership. It is the policy of this state to uphold and protect valid contractual rights and obligations.

4. One of the appellant's contentions is that the covenant is un-

reasonable in that it restricts his activities in a manner broader than necessary for the protection of the partnership. More specifically, it is contended that to restrict the "practice of medicine and surgery," which was done in this agreement, would prevent his practicing in other fields of medicine which would not necessarily be competitive with the practice of other physicians in the clinic. In *McMurray v. Bateman*, 221 Ga. 240, supra, we rejected a similar argument, citing the statutory definition of the practice of medicine and holding that the activity proscribed ("the practice of medicine or surgery") was "necessary to the promisee's protection," and no broader than language approved in similar prior cases. Therefore, we reject this contention.

5. The appellant contends that even if the restrictive covenant is valid, it should not be enforced against him, because the partnership breached the contract first. The breach is said to have resulted from certain recriminations, acts of professional jealousy, and allegations of incompetence toward Dr. Rash by certain partners, which made his resignation from the partnership a matter about which he had no choice, hence "involuntary." However, the evidence does not authorize a conclusion that the appellee partnership breached the agreement. Moreover, the evidence showed a spirit on the part of the partnership to resolve the disputes and disagreements among certain of the members of the obstetrics and gynecology section. Also, the partnership agreement provided a vehicle for expelling partners for cause, and the appellant did not avail himself of any right to pursue either this avenue of relief or a dissolution of the partnership. He not only submitted a letter of resignation, but also thereafter accepted all monetary benefits which the contract afforded. He cannot enjoy the benefits afforded by the contract and at the same time claim that the agreement was breached as to him.

6. With respect to the remedy, the plaintiff-appellee takes the position that it has no adequate remedy at law, and thus it has appealed to a court of equity for an injunction. We agree. Damages would be difficult to calculate, and even the awarding of same would not properly vindicate the plaintiff's rights. Injunctive relief has repeatedly been found appropriate in cases where covenants such as this have been found to be enforceable.

The trial court did not err in its judgment granting the injunction.

*Judgment affirmed. All the Justices concur, except Smith and Bell, JJ., who dissent.*

DECIDED SEPTEMBER 26, 1984.

*Drew, Eckl & Farnham, W. Wray Eckl, Theodore E. G. Pound,*

for appellant.

*Whelchel, Dunlap & Gignilliat, Weymon H. Forrester, James E. Brim III,* for appellee.