67966. P. H. L. DEVELOPMENT CORPORATION, INC.
v. SAMMY GARRISON CONSTRUCTION, INC.

CARLEY, Judge.

Appellant-contractor entered into a written contract with appellee-subcontractor whereby appellee agreed to erect a pre-engineered metal building. After construction began, a dispute arose between the parties, and eventually appellee was prevented from performing any further work on the project. Appellee initiated the instant suit against appellant, seeking to recover the remaining balance of the contract price, plus an amount for additional work performed and expenses incurred as evidenced by certain change orders. Appellant answered and counterclaimed, alleging breach of contract by appellee. Appellant sought damages for expenses it had allegedly incurred in completing the contract. Following a jury trial, a verdict was returned for appellee for the full balance of the contract price plus the additional amount as evidenced by the change orders. Appellant appeals from the judgment entered on the verdict.

1. Appellant enumerates as error the general grounds. The evidence, while not without conflict, authorized the jury to make the following findings of fact: Under the terms of the contract, appellee was to erect a large pre-engineered metal building. Appellant was to fur-

nish all of the necessary materials for the erection of the building. Sometime after commencement of the construction of the building, appellee discovered that appellant had not provided all of the necessary materials, and that some of the materials that had been provided were damaged. Delays in the subsequent erection of the building were caused by the lack of materials and by bad weather. Despite appellee's numerous requests, appellant never provided the missing materials, which included roofing, side wall screws and mastic, nor did appellant replace the original damaged roof sheets. Due to time constraints and the specific instructions by the owners of the building, appellee completed the building without the missing materials and by utilizing the damaged roof sheets where possible. Specifically, the roof was erected without certain screws and mastic in areas in which they could later be applied. At all times, appellee had been ready, willing and able to return to the project upon the receipt of the missing materials. Approximately two weeks after appellee's completion of its initial work on the project, appellee returned to the job at the owner's request in order to repair reported leaks in the roof. The following week, appellee received another call to repair additional leaks. Appellee sent a crew to the job site but was prevented by appellant from performing any further work on the building at that time. With the owner's permission, appellee was able to repair the leaks the following weekend. Appellee has received no other calls from appellant or the owner concerning the need for any further repairs to the building. There was evidence that 85 to 90% of the roofs of similar metal buildings leak initially, and that it is common practice for the erector of such metal buildings to return to the job for up to a year in order to repair leaks. There was also evidence that appellee had performed the job in a satisfactory manner, and the job was completed except for materials it never received. Furthermore, appellee did not perform the job in the specified time period because of delays caused by the lack of materials.

Appellant contends that on this evidence a finding is demanded that appellee did not fully perform its obligation under the contract, and that appellee may not recover the full contract price but only for that portion of the contract which it has performed. Appellant relies specifically on appellee's admission that it never applied the mastic or screws in the erection of the roof.

" '[I]t is generally held that, where the compensation is due only on the performance of the contract, a literal and strict performance is not required, and *if the builder acting in good faith and intending and attempting to perform his contract, does so, he may recover the contract price*, notwithstanding slight and trivial defects or deviations in performance, for which compensation may be made, in all its material and substantial particulars, by an allowance to the owner.'

[Cits.]" (Emphasis supplied.) *Allied Enterprises v. Brooks*, 93 Ga. App. 832, 834 (3) (93 SE2d 392) (1956). The evidence of record authorized the jury to find that appellee substantially performed the contract. There was evidence that appellee completed the erection of the building with the exception of the placement of the missing materials. There was further evidence in the form of testimony by appellee's expert that the work was satisfactorily performed. Moreover, we note that because there was evidence to authorize the jury to find that appellee's obligations under the contract had been substantially performed, such of appellant's contentions as are predicated upon the terms of the contract regarding appellee's *default* are without merit.

Furthermore, under the above-stated principles of law, the evidence in the instant case does not demand that appellant be given an "allowance" for any "slight and trivial defects in [appellee's] performance." *Allied Enterprises v. Brooks*, supra at 834. It has been held that " 'where a defendant prevents the performance of a stipulation of a contract undertaken by the plaintiff, he is estopped from setting up in his own behalf any injury which may have resulted from the non-performance of such condition.' [Cits.]" *Allied Enterprises v. Brooks*, supra at 834. Thus, even if the evidence demanded a finding that appellee's work was incomplete or defective in the manner alleged by appellant, the jury was clearly authorized to also find that by not providing the necessary materials and by preventing its crews from repairing the leaks in the roof, appellant wrongfully prevented appellee from timely performing the remainder of the work on the contract. A finding that appellee was entitled to the entire contract price plus the amount for additional work was authorized by the evidence.

2. Appellant enumerates as error the admission, over its hearsay objection, of testimony to the effect that its men had been on the roof after appellee had left the job. The transcript reveals that similar testimony by other witnesses was later admitted into evidence without objection. The erroneous admission of evidence over objection is not reversible error where similar evidence is subsequently admitted without objection. See *Cloer v. Life & Cas. Ins. Co.*, 222 Ga. 798, 801 (2) (152 SE2d 857) (1966); *Eiberger v. Martel Electronic Sales*, 125 Ga. App. 253, 255 (6) (187 SE2d 327) (1972).

3. During trial, appellant attempted to admit into evidence a letter written by a non-party to the action and addressed to appellant. The letter referred to specific areas of defective workmanship which the author had discovered during his inspection of the project. Appellee made a hearsay objection. The trial court allowed the witness for appellant to testify as to the existence and nature of the letter and as to appellant's subsequent actions and conduct which resulted from

the letter. However, testimony as to the contents of the letter and the letter itself were excluded. Appellant enumerates as error the exclusion of the letter, asserting that it was admissible as original evidence to explain conduct.

OCGA § 24-3-2 provides: "When, in a legal investigation, information, conversations, letters, and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." "Hearsay when admissible, under this rule, derives its competency from the necessity of the case. If the fact that a [letter was written] is all that is relevant or needed as an inducement to explain conduct . . . [cit.], '[i]t is more regular to admit only the fact that a [letter was written], without going into the particulars of what was said.' " *Todd v. State*, 200 Ga. 582, 588 (37 SE2d 779) (1946). See also *Kelly v. State*, 82 Ga. 441 (3) (9 SE 171) (1889).

In the instant case, it is clear that the existence and nature of the letter was all that was relevant and necessary to explain appellant's subsequent conduct. As recently noted by the Supreme Court of Georgia, "[i]f the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 must be contained within its proper limit. Otherwise, the repetition of the rote words 'to explain conduct' can become imprimatur for the admission of rumor, gossip, and speculation." *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984). We cannot say that the trial court erred by allowing only testimony as to the existence of the letter and as to appellant's subsequent conduct. Moreover, even if the exclusion of the letter was error, it was harmless. Earlier in the trial, the author of the letter had testified fully as to his examination of the project and as to the defects he had discovered. Appellant's agents also testified throughout the trial as to the specific actions taken by appellant as a result of these alleged defects. See *Orkin Exterminating Co. v. Dauer*, 146 Ga. App. 61 (3) (245 SE2d 320) (1978).

4. Appellant's final enumeration asserts that the trial court erred in allowing counsel for appellee to make improper and prejudicial remarks to the jury during his closing statement.

The transcript reveals that during his closing argument, counsel for appellee made a certain remark from which the jury could imply that one of appellant's witnesses had a financial interest in the outcome of the case, and that perhaps appellant and the witness had some type of "agreement." Appellant objected to this remark, but did not move for a mistrial or request that the trial court instruct the jury not to consider the argument, or that appellee's counsel be reprimanded following the objection. Appellee's counsel merely was instructed to continue his argument, and the trial court thereby, in effect, overruled the objection.

"[A] mere objection to an unwarranted and prejudicial argument, without more, is not sufficient to properly invoke a ruling by the court. [Cit.]" *McCoy v. Scarborough*, 73 Ga. App. 519, 524 (37 SE2d 221) (1946). "Although counsel made known his objection to the argument and the grounds therefor *prior* to the court's ruling thereon, he failed to specify what form of relief he desired in seeking the ruling, hence failed to invoke a reviewable ruling. Furthermore, after the court had overruled his objection, counsel made known neither any objection to the ruling nor any action which he desired the court to take and merely acknowledged, if not acceded to, the court's ruling. Therefore, even if the argument was improper . . . counsel waived his objection . . . ." *Seaboard Coast Line R. Co. v. Wallace*, 227 Ga. 363, 365 (180 SE2d 743) (1971). See also OCGA § 9-10-185; *Holt v. State*, 147 Ga. App. 186 (248 SE2d 223) (1978); *Carroll v. State*, 147 Ga. App. 332, 335 (248 SE2d 702) (1978); *Speagle v. Nationwide Ins. Co.*, 138 Ga. App. 384, 386 n.1 (226 SE2d 459) (1976).

Other allegedly improper remarks made by appellee's counsel to which appellant made no objection or motion likewise provide no basis for review by this court. *McCoy v. Scarborough*, supra.

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 28, 1984.

*S. Phillip Brown*, for appellant.
*Arthur L. Phillips*, for appellee.