**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 10, 2018**

# In the Court of Appeals of Georgia

A18A1138. SOUTHEASTERN ERECTORS, LLC v. PREMIER
        BUILDING SYSTEMS, INC.

McFADDEN, Presiding Judge.

Southeastern Erectors, LLC appeals the grant of summary judgment to Premier

Building Systems, Inc. on Southeastern Erectors' breach of contract claim. Whether

Southeastern Erectors substantially completed work entitling it to payment under the

contract, whether Premier ordered Southeastern Erectors to stop work, and whether

Southeastern Erectors abandoned the work are disputed issues of material fact for the

jury. So we reverse.

1. *Background.*

"On appeal from a grant of summary judgment, we apply a de novo standard

of review. The moving party must demonstrate that there is no genuine issue of

material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Costello Indus. v. Eagle Grooving*, 308 Ga. App. 254 (707 SE2d 168) (2011) (citations and punctuation omitted).

So viewed, the record shows that Southeastern Erectors entered a contract with Premier under which Southeastern Erectors agreed to install a 40-foot by 240-foot, steel-framed, manufactured building at a site in Monticello, New York. The contract, drafted by the wife of David Brock, the owner of Southeastern Erectors, provided that "Total = $76,800.00" and that "at 50% completion of Steel, payment of $38,400.00 will be due, with the remaining balance of $38,400.00 due upon completion of the job." Brock explained — and Premier agrees — that under the terms of the contract, Southeastern Erectors would be entitled to the $38,400 draw when it framed the building. Brock explained that Southeastern Erectors would be entitled to the remaining $38,400 when the building was complete and Premier had completed a walk-through.

When the seven- or eight-person Southeastern Erectors crew arrived at the New York job site, the site was not ready for them to begin work. The slab upon which the metal building was to be erected had been poured incorrectly, so it was out of square.

2

This meant that the holes for the building's anchor bolts were not drilled in the proper locations in the slab, which was a problem because the pre-punched holes in the building's components had to align with those holes in the slab. Brock's crew left the site but remained in New York while Premier attempted to fix the problems.

About a week later, Premier told Brock the slab would be ready so his crew returned to the site. But the problems in the concrete pad had not been properly corrected. Nonetheless, Russ Freeman, Premier's senior construction manager, directed the Southeastern Erectors crew to proceed and "make it work."

As the crew was framing the interior partition walls in the building, it became clear that Premier had given Southeastern Erectors the wrong set of plans; the interior design had changed but Premier had not sent Southeastern Erectors a revised set of drawings reflecting these changes. Freeman, the senior construction manager, called Brock and instructed him to have his crew stop the framing work because the layout was wrong and could change. Scott Phillips, the president and owner of Premier, told Brock that instead, his crew should start sheeting the exterior of the building.

Brock emailed an invoice for the first draw. He explained that the entire job was between 49 and 50 percent complete, the framing part of the job was 95 percent complete, and his crew needed only three more hours to complete the framing.

3

According to Brock, since Premier directed him to stop the framing work, he considered the framing to be finished.

Phillips emailed Brock that Premier would not pay the draw because Southeastern Erectors had not finished framing. Brock countered that in that case, he would return to framing to complete the work in order to get the draw. He explained that he was either going to finish framing to get the draw or Premier could send the draw and he would start sheeting. According to Brock, Phillips told Brock to remove his crew from the job. He warned that if the crew drilled any anchor bolts prematurely, Brock would be back charged. The building in Monticello was never fully framed while Southeastern Erectors was on the project.

Southeastern Erectors filed this lawsuit for breach of contract or, in the alternative, for damages under a theory of quantum meruit, seeking damages and attorney fees. It alleged that Premier breached the contract in three respects: (1) by failing to pay the $38,400 draw; (2) by preventing Southeastern Erectors from completing the project by unilaterally terminating Southeastern Erectors from the project; and (3) by failing to have the job site properly prepared, which was required by an implied term of the contract.

Premier counterclaimed for breach of contract and for setoff or recoupment, seeking damages, a reduction in any award to Southeastern Erectors, and attorney fees. Premier moved for partial summary judgment on Southeastern Erector's breach of contract claim. The trial court granted the motion and this appeal followed.

2. *Summary judgment.*

Southeastern Erectors argues that the trial court erred in granting summary judgment because whether Premier breached the contract by failing to pay the $38,400 draw depends on disputed issues of material fact. It argues that the evidence would allow a jury to find that its framing work was substantially complete, entitling it to the draw of $38,400, that any failure in its performance was due to Premier's command to leave the job site, and that Premier's refusal to pay the draw breached the contract. (Southeastern Erectors does not argue that the trial court erred by granting Premier summary judgment on its claim for breach of contract for failing to have the job site prepared.)

Under OCGA § 13-4-20, "[p]erformance, to be effectual, must be accomplished by the party bound to perform . . . and must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." "[A] literal and strict performance is not required, and if [a party] acting in good faith and

intending and attempting to perform his contract, does so, he may recover the contract price, notwithstanding slight and trivial defects or deviations in performance, for which compensation may be made . . . by an allowance to the [other party]." *P.H.L. Dev. Corp. v. Sammy Garrison Constr.*, 171 Ga. App. 393, 394-395 (1) (319 SE2d 543) (1984) (citation, punctuation, and emphasis omitted). Whether a party has substantially performed its obligations under a contract is generally a question for the factfinder. See, e.g., id.; *Oak Creek Dev. Corp. v. Hartline-Thomas, Inc.*, 138 Ga. App. 83, 85-86 (1) (b) (225 SE2d 515) (1976).

Whether Premier prevented Southeastern Erectors from completing its work is also a jury question. "[F]or a party to recover on a contract when the adverse party fails to perform, the party seeking recovery must establish its own performance or a valid excuse for the failure to perform." 13 Williston on Contracts § 39:1 (4th ed.) (citations omitted). "[A] contracting party whose performance of its promise is prevented by the other party is not obligated to perform and is excused from any further offer of performance. In turn, the preventing party is not allowed to recover damages for the resulting nonperformance or otherwise benefit from its own wrongful acts." Id. at § 39:3 (citations omitted). Further, "[a] party to a contract can not cause a breach or delay in compliance by the other, and then set up the breach or delay so

6

caused as freeing him from the contract." *English v. Muller*, 270 Ga. 876 (1) (514 SE2d 194) (1999) (citations and punctuation omitted); *Champion Windows of Chattanooga, LLC v. Edwards*, 326 Ga. App. 232, 241 (2) (756 SE2d 314) (2014) (citations and punctuation omitted) (same).

So "even if the evidence demanded a finding that [Southeastern Erector's] work was incomplete . . . the jury [could] find that by [ordering it to stop work, Premier] wrongfully prevented [Southeastern Erectors] from timely performing the remainder of the work on the contract." *P.H.L. Dev. Corp.*, 171 Ga. App. at 395 (1).

Premier argues that it simply asked Southeastern Erectors to pause its work and that Southeastern Erectors abandoned the job. These are issues for the jury. See *Tidwell Homes v. Shedd Leasing Co.*, 191 Ga. App. 892, 893-894 (1) (383 SE2d 334) (1989).

For these reasons, the trial court erred by granting Premier summary judgment on Southeastern Erectors' breach of contract claim.

*Judgment reversed. Ray and Rickman, JJ., concur*.