45583. SHANKMAN v. COASTAL PSYCHIATRIC ASSOCIATES et al.
45666. COASTAL PSYCHIATRIC ASSOCIATES v. SHANKMAN et al.
(368 SE2d 753)

PER CURIAM.

Judgments affirmed without opinion pursuant to Rule 59.

*All the Justices concur, except Smith, J., who dissents as to Case No. 45583.*

SMITH, Justice, dissenting.

This case involves a covenant not to compete used in an employment contract between the appellant, Dr. Shankman, and the appellee, Coastal Psychiatric Associates. Upon termination of Dr. Shankman's employment, the appellee sought an injunction to enforce the terms of the covenant. The trial court found the covenant to be reasonable and granted an injunction. As a result, Dr. Shankman was required to transfer several patients to the care of another psychiatrist.

Contracts between a medical practitioner and medical employer, hospital, or patient "must be examined in light of the strong policy of

the state to protect the health of its citizens and to regulate those professionals that it licenses." *Emory University v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981). I would hold restrictive covenants in a medical contract illegal per se as against this strong public policy irrespective of whether the covenant is reasonable.[1] In my opinion, this result is demanded in light of the medical profession's special relationship with the public it serves and this State's constitutional prohibition against contracts in restraint of trade.

The Code of Professional Responsibility for attorneys in Georgia provides:

> A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

DR 2-108 (A), 252 Ga. at 598. I see no reason why doctors should not be held to a similar standard.

The legal profession prohibits such agreements because they limit a client's freedom to choose the best possible legal representation. Comment, ABA Model Rules of Professional Conduct 5.6(A). Likewise, medical patients should not be forbidden from seeking the best medical treatment from the doctor of their choice simply because of an agreement with a third party.[2] The opinions of the counsel on Ethical and Judicial Affairs of the American Medical Association, 1986 § 9.02 states:

> Agreements restricting the practice of medicine. The counsel on ethical and judicial affairs discourages any agreement between physicians which restricts the right of a physician to practice medicine for a specified period of time or in a specified area on termination of employment or a partnership or a corporate agreement. *Such restrictive agreements are not in the public interest.* [Emphasis supplied.]

It is in the public interest for the medical patient to have the right to

---

[1] Two states, Colorado and Delaware, have statutes making restrictive covenants between physicians illegal per se. Colo. Rev. Stat. § 8-2-113 (3) (Supp. 1982); 6 Del. C. § 2707 (1983).

[2] "It is a part of the public policy of this State to suppress monopolies and to encourage competition, and to this end restrictions on the right of any person, firm, or corporation to engage in its business *and to do business with those members of the public who choose to partake of its services are not favored.* [1983 Ga. Const., Art. III, Sec. VI, Par. V; OCGA § 13-8-2.]" (Emphasis supplied.) *Troup County EMC v. Ga. Power Co.*, 229 Ga. 348, 351 (191 SE2d 33) (1972).

choose the best doctor and medical treatment available.

The medical profession, like the legal profession, is one that of necessity must have the faith and confidence of its patients (clients) in order to give effective treatment. When a patient (client) has entrusted confidential information to the doctor (lawyer) this creates a relationship of confidence and the patient (client) does not wish to have that relationship involuntarily terminated. This is especially true in the field of psychiatry which deals with emotional and mental illness. *St. Paul Fire &c. Ins. Co. v. Mitchell*, 164 Ga. App. 215 (296 SE2d 126) (1982) (discussing the emotional reaction of the patient toward the analyst). It is unfortunate that patients must be told that they can no longer be treated by their doctor because of an agreement with a third party. Yet, this is what happens when this Court allows doctors to become businessmen instead of healers. " '[R]ules that govern tradesmen in the market place are of little relevancy in dealing with [physicians] who hold themselves out as experts and whose practice is regulated by the state.' " *Emory University v. Porubiansky*, 248 Ga. at 394.

DECIDED JUNE 9, 1988.

*Bishop & Catlin, R. Peter Catlin*, for Shankman et al.
*Hansell & Post, Walter H. Bush, Jr., Nan H. Jennings, Dickey, Whelchel, Brown & Readdick, J. Thomas Whelchel*, for Coastal Psychiatric Associates et al.