A89A0905. TIDWELL HOMES, INC. v. SHEDD LEASING COMPANY, INC.
(383 SE2d 334)

BANKE, Presiding Judge.

The appellee, a foundation contractor, brought suit against the appellant builder to recover an indebtedness allegedly owed for the construction of foundation footings for a $2,000,000 residence. The appellant counterclaimed, alleging that the appellee had left the job without performing all of the work it had agreed to perform and that some of the work the appellee had performed was not in accordance with the plans and specifications. The case was tried before a jury,

which returned a verdict in favor of the appellee, awarding it the entire amount sought in the complaint, plus interest. This appeal followed.

The appellee was not hired on a fixed-price basis but was to be paid for its work in accordance with a "price sheet" setting forth specific prices or rates for various tasks. Subsequent to the commencement of the work, it became necessary to modify the original foundation plans due to the discovery of stone outcroppings. These modifications, of course, increased the cost of the project. The cost was further increased as the result of certain damage caused by the overturning of a concrete pump which was being operated by a separate contractor.

There was a dispute over whether the appellee had agreed to construct all of the foundation walls or whether it had, from the outset, refused to construct the largest of the walls, which was to be 18 feet high, because of the presence of an equally high wall of fill dirt only a few feet away. The appellee's president, Mr. Shedd, testified that he consistently refused to build this wall because the proximity and height of the fill dirt created the potential for a deadly cave-in.

After the foundation footings had been completed, but before work had begun on the walls, Shedd asked the appellant's president, Mr. Tidwell, for an interim payment for the work thus far performed. Tidwell testified that it was at this time that he first learned that Shedd did not intend to build the 18-foot foundation wall. He stated that he handed Shedd's bill for the footings back to him because he believed it was too high and deviated from the price list but that he urged him to begin work on the remaining walls, promising to "give him some money . . . once I knew that he had his forms down there and he was going to do the work. . . ." It is apparent without dispute that the appellee did no further work on the project. However, Shedd's explanation for the cessation of work differed considerably from Tidwell's. He testified that after he asked Tidwell for the interim draw, Tidwell asked him how much the remaining work was going to cost and that upon hearing his answer, Tidwell replied, "That's too much," and told him that "since he (Tidwell) was going to have to do the [18-foot] wall anyway he would go ahead and complete the rest of the walls himself." Shedd testified that he responded by saying, "That's fine with me," and believed he and Tidwell "were in an amicable position at that point." *Held*:

1. The jury was authorized to conclude from the evidence that the appellant was contractually obligated to pay the appellee for the work the appellee had performed at the rates specified in the price sheet. While the appellant contends that the appellee breached the contract by abandoning the job when the request for an interim draw was refused, the jury was authorized to conclude from Shedd's testi-

mony that the contract was terminated at that point by the mutual consent of the parties. "Parties may by mutual consent abandon a contract so as to make it not thereafter binding." *Shoup v. Elliott*, 192 Ga. 858, 861 (16 SE2d 857) (1941); *Hennessy v. Woodruff*, 210 Ga. 742, 744 (2) (82 SE2d 859) (1954). The trial court consequently did not err in denying the appellant's motions for directed verdict and for judgment notwithstanding the verdict.

2. In view of our conclusion that the jury was authorized to conclude that the appellant was contractually indebted to the appellee for the amount claimed, we find it unnecessary to reach the appellant's contention that the evidence would not have supported a recovery on the basis of quantum meruit.

3. The appellant contends that the trial court erred in giving the appellee's requested charge that "that impossible, immoral and illegal conditions are void and are binding on no one." The appellee, on the other hand, contends that this charge was authorized by Shedd's testimony that he "underst[oo]d it to be a violation of law" to build a retaining wall immediately adjacent to an unstabilized wall of fill dirt, as well as by the testimony of Shedd's father, who had been the appellee's job foreman at the site, that he was "concerned" that he might be cited and fined for safety violations if he built the wall under the conditions which existed at the site.

In reliance on the court's expressed willingness to give the requested charge, the appellee's counsel made the following argument to the jury: "[The] undisputed testimony was that it's an O.S.H.A. violation, a violation of federal occupational worker safety laws to put a man in that situation. Even if Shedd was responsible for doing the entire job, that condition right there excused them from having to go any further." We must agree with the appellant that there was no evidence whatever from which the jury could have determined that the construction of the wall would have resulted in a violation of any "federal occupational worker safety laws." The trial court was not asked to take judicial notice of any such laws, and none were before the jury. Indeed, no federal laws or regulations were ever cited to the trial court, nor, for that matter, have any been cited to this court on appeal.

There is authority for the proposition that regulations appearing in the Federal Register may be judicially noticed by the courts of this state, even though state regulations may not. See *Sims v. Southern Bell &c. Co.*, 111 Ga. App. 363, 364-5 (141 SE2d 788) (1965). However, "[a]lthough the trend seems to be to extend the doctrine of judicial notice to '[matters] capable of *immediate* and accurate demonstration by resort to *easily accessible* sources of indisputable accuracy,' under our tradition of party-presentation the extent of the courts' willingness to take the initiative in looking up the authorita-

tive sources will usually be limited." Id. at 365. Accord Agnor's Ga. Evidence, § 16-3, p. 442 (2d ed.). There having been no basis upon which the jury could have determined the contents or requirements of any federal worker safety laws, we hold that the giving of the requested charge was not authorized on the basis of the theory urged by the appellee.

Having reached this conclusion, however, we conclude that the court's charge on illegality was nevertheless authorized upon another theory. It has been held that "[t]he word 'illegal' applies to contracts forbidden by public policy" as well as to contracts expressly forbidden by law, *Hanley v. Savannah Bank &c. Co.*, 208 Ga. 585, 587 (68 SE2d 581) (1952); and it has also been held that where a contract contains some provisions which are based on sufficient and legal consideration and some which are illegal, the unenforceability of the latter will not affect the validity of the former. *Starr v. Robinson*, 181 Ga. App. 9, 10 (351 SE2d 238) (1986).

The jury could reasonably have concluded from the testimony in this case that for the appellee to have proceeded with the construction of the wall under the site conditions as they existed would have required exposing its workers to a high risk of injury or death. Where the performance of a contractual condition would be contrary to the health, safety or welfare of others, it may be considered unenforceable. See generally OCGA § 13-8-2; *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 337, n. 4 (329 SE2d 136) (1985). Cf. *Hughes v. Reynolds*, 223 Ga. 727, 730 (157 SE2d 746) (1967). We consequently hold that the giving of the requested charge did not constitute reversible error.

4. The appellee has moved for the imposition of a ten percent penalty against the appellant pursuant to OCGA § 5-6-6 for filing a frivolous appeal. As we do not consider the appellant's final enumeration of error to have been entirely frivolous, this motion is denied.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED MAY 30, 1989 —
REHEARING DENIED JUNE 19, 1989.

*Kessler & Parks, Michael A. Kessler*, for appellant.
*McReynolds & Boyd, Frederic S. Beloin, Michael J. Welch*, for appellee.