A93A0878. OSTA v. MORAN.
(430 SE2d 837)

BLACKBURN, Judge.

On April 5, 1991, appellant, Salim M. Osta, M.D., P.C., A Georgia Corporation d/b/a Oncology Medical Clinic (Clinic) and Antonio Moran, Jr., M.D., entered into an agreement titled "Employment Agreement" (Agreement). Thereafter, Moran filed a declaratory judgment action seeking, among other things, a declaration that the noncompetition covenant contained in the Agreement was invalid and unenforceable. The Clinic appeals from an order of the Superior Court of Glynn County which held that the noncompetition covenant was invalid because it was overbroad in restriction. The covenant contained the following language: "14. *Noncompetition.* Upon the termination of the Doctor's employment hereunder for any reason whatsoever, the Doctor shall not, for a period of two years thereafter, except with the written consent of the [Clinic], engage in the practice of medicine within a 50-mile radius of any office operated by the [Clinic] for the

---

practice of medicine. This provision shall not terminate at the time Doctor becomes a shareholder in the corporation, should same occur."

1. The Clinic asserts that the trial court erred in applying an overly restrictive standard in determining the validity of the noncompetition covenant. The Clinic argues that the Agreement was an employment agreement *and* a sale of business agreement.[1] Its argument is based on the portion of the Agreement which offers Moran (referred to as the employee in the Agreement) the option to purchase 50 percent of the outstanding stock of the Clinic, at the end of two years, conditioned upon his good standing with the Clinic as an employee with no violations of any provision of the Agreement. The option is further conditioned upon Moran's ability to pay the purchase price for the stock which was to be determined at the time of the sale according to one of two possible formulas.

The Agreement contains an option to purchase 50 percent of the stock of the Clinic. The option is not available until a future date and is conditioned upon the occurrence or nonoccurrence of specific events. "An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." (Citation and punctuation omitted.) *Russell v. City of Atlanta*, 103 Ga. App. 365, 367 (119 SE2d 143) (1961). "Unless all the terms and conditions are agreed on, and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect." (Citation and punctuation omitted.) Id. See also OCGA § 13-3-2.

The Agreement before this court does not contain all terms and conditions regarding the sale of the Clinic's stock and it clearly contemplates future negotiations. Therefore, this court finds that the Agreement was not a contract for the sale of a business and that it is exactly what it purports to be, an "Employment Agreement." Furthermore, this court declines to adopt the Clinic's argument that doctors are not "employees" and, therefore, the court should apply the "blue penciling" standard to its employment contracts.[2] The cases cited by the Clinic for this proposition are distinguishable from the present case.

In *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322 (320 SE2d 170) (1984), the court distinguished an employment agreement from the partnership agreement before it. "In a partnership agreement . . . as opposed to an employment agreement, the consideration flows

---

[1] The Georgia Supreme Court has "noted that covenants in the sale of a business, unlike covenants in contracts of employment, can be blue penciled to make them valid." *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465) (1989). See also *Watson v. Waffle House*, 253 Ga. 671 (324 SE2d 175) (1985). If the Agreement is found to be unenforceable as written, the Clinic argues that this court should blue pencil the Agreement to make it enforceable.

[2] Id.

equally among the contracting parties. . . . [A] partner has not only restricted himself, but he has also exacted from each of the other contracting parties a like restriction." Id. at 325. This is not the case before us. Similarly, in *Roberts v. Tifton Med. Clinic*, 206 Ga. App. 612 (426 SE2d 188) (1992), we determined that the parties were of equal bargaining position, not merely because they were physicians, but because the physician who had violated the covenant, Roberts, was president of the corporation that owned the clinic. There, we determined that he was an equal bargainer by virtue of his high-paying salary within the firm, his voting ability in the firm, and the fact that he was a shareholder in the corporation. Again, this is not the case before us.

In the present case, Moran held no official status with the Clinic other than that of employee; he was not an owner, he held no stock, he had no voting rights. The Agreement determines Moran's benefits and responsibilities as an employee. This court declines to create a bright line distinction between physicians and employees. The trial court applied the appropriate standard by declining to blue pencil or sever the portions of the Agreement that it determined were invalid as overbroad.

2. The Clinic's second enumeration of error asserts that the trial court erred in its determination that the restrictive covenant in the Agreement was geographically overbroad and, therefore, unenforceable. " 'Georgia law prohibits contracts or agreements, tending to defeat or lessen competition or in general restraint of trade. However, covenants against competition in employment contracts are considered in partial restraint of trade, and they are enforceable if strictly limited in time and territorial effect, and if they are otherwise reasonable considering the business interests of the employer sought to be protected and the effect on the employee.' [Cit.]" *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (274 SE2d 329) (1981).

The Georgia Supreme Court has established guidelines for the determination of the reasonableness of a restrictive covenant. "[T]he three-element test of duration, territorial coverage, and scope of activity [is used], not as an arbitrary rule but as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied." *Watson*, supra at 673. The application of the test is to be made by the court, as a matter of law. *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138 (287 SE2d 546) (1982).

While it is true that a sufficiently limited restriction need not specify exact geographical boundaries, "[a] restriction relating to the area in which the employer does business is generally unenforceable due to overbreadth, unless the employer can show a legitimate business interest that will be protected by such an expansive geographic description." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 466 (422

SE2d 529) (1992). In the present case, the Clinic cannot justify the potentially extensive geographic limitation placed upon Moran. No matter where Moran sets up his practice for the next two years, the Clinic could move within 50 miles of that location and cause Moran to move pursuant to the terms of the Agreement.[3] The only interest protected by the present restriction is that of the Clinic to avoid competition, which is not a legitimate business interest. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (236 SE2d 265) (1977). For the reasons set out above, the order of the trial court is affirmed.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED APRIL 12, 1993 —
RECONSIDERATION DENIED APRIL 28, 1993 

Fendig, McLemore, Taylor & Whitworth, Gilbert C. McLemore, Jr., for appellant.
C. Nelson Jarnagin, Randall M. Clark, for appellee.

---

[3] The Clinic attempts to assert that it will not move its location in order to thwart Moran's practice as long as Moran sets up his practice 50 miles from the Clinic's present location. However, this is not in the wording of the Agreement and cannot be considered by this court. OCGA § 13-2-2 (1).