A93A1525, A93A1527. PITTMAN et al. v. HARBIN CLINIC PROFESSIONAL ASSOCIATION; and vice versa.
A93A1526, A93A1528. HARBIN CLINIC PROFESSIONAL ASSOCIATION v. NAGUSZEWSKI et al.; and vice versa.
(437 SE2d 619)

SMITH, Judge.
Neurosurgeons Harris Pittman, Dennis Murphy, and Carl Herring, and neurologists Robert and William Naguszewski brought an action against their former employer, the Harbin Clinic Professional Association, seeking a declaration that the covenants in their respective employment contracts restricting them from competing with the clinic after leaving its employ were unenforceable. The clinic answered and counterclaimed, seeking to enjoin the doctors from establishing their new practices in the Rome, Georgia, area in violation of the covenants in their contracts. The trial court found the restrictive covenants in the contracts of Drs. Pittman and Murphy valid and enforceable, and those in the contracts of Dr. Herring and both Drs. Naguszewski void and unenforceable. In Case No. A93A1525, Drs. Pittman and Murphy appeal from the trial court's order finding the

covenants in their contracts valid and enforceable and enjoining them from practicing in the Rome area. In Case No. A93A1526, the Harbin Clinic appeals from the trial court's order finding the covenants in the contracts of Dr. Herring and the Drs. Naguszewski void and unenforceable and refusing to enjoin the doctors from practicing in the Rome area. Case Nos. A93A1527 and A93A1528 are the cross-appeals filed by the appellees to each direct appeal. The cases have been consolidated for review in this opinion.

We note initially that these appeals were filed originally in the Supreme Court, which transferred them to this court. Although nominally involving injunctions, no substantive issues of equity are involved in these appeals. Resolution of the appeals turns instead on the question of the validity and enforceability of the contract provisions restricting competition, which is a question of law. See *Roberts v. Tifton Med. Clinic*, 206 Ga. App. 612 (426 SE2d 188) (1992).

The record reveals that the Harbin Clinic Professional Association employs approximately 50 doctors, including general practitioners and medical specialists. While employed at the clinic, Drs. Pittman and Murphy were shareholders in the professional association, while Dr. Herring and the Drs. Naguszewski were not. The employment contracts of Drs. Pittman and Murphy were those entered into only by physicians who had worked for the clinic for at least two years and had been invited to join the clinic permanently and purchase stock, which the association agreed to repurchase in the event of termination of the employment relationship.

All the plaintiff doctors were recruited to the clinic from outside the Rome area and none brought patients with them. Each left employment at the clinic through voluntary resignation, not through termination by the association. They resigned on various dates over a period of several months and began a new practice together in Rome. Their resignations left one physician in the neurosurgery department at the clinic.

In Georgia, it has long been the law that non-competition clauses in physicians' employment contracts do not per se violate the state's public policy. Like such clauses in other employment contracts, if they are sufficiently limited and are reasonable, considering the interest to be protected and the effects on both parties to the contract, they will be upheld. See *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 323-324 (1) (320 SE2d 170) (1984). In determining reasonableness, a three-part test is applied, examining duration, territorial coverage, and the scope of the prohibited activity, see *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992), not as an arbitrary rule, but as "a helpful tool in examining the reasonableness of the particular factual setting to which it is applied." *Watson v. Waffle House*, 253 Ga. 671, 673 (2) (324 SE2d 175) (1985).

1. In Case No. A93A1525, the covenants in issue prohibit Drs. Pittman and Murphy from "practicing medicine" within a 30-mile radius of the clinic's location in Rome, Georgia, for a period of one year after leaving employment at the clinic. They also provide for waiver of this restriction, upon payment by the employee doctor of a sum certain, calculated in a method set forth in the contract. Applying the three-element test, the trial court found that all three elements of the restriction in the contracts of Drs. Pittman and Murphy were reasonable and that the restrictions were therefore enforceable. Drs. Pittman and Murphy contend this ruling was erroneous.

We affirm. The one-year limitation is patently reasonable. Limitations of one year and greater have been held to be reasonable. See, e.g., *Rash*, supra; *Carroll v. Harris*, 243 Ga. 34 (252 SE2d 461) (1979). We reject, as did the trial court, the argument made by Drs. Pittman and Murphy that the scope of the activity prohibited is overbroad because it encompasses such activities as telephonic communication from outside the prohibited area with patients or colleagues within it. Reading the covenants as a whole, it is clear that their plain meaning prohibits only the establishment of an office and hospital practice within the protected area. See *Rash*, supra at 326-327 (4); *McMurray v. Bateman*, 221 Ga. 240, 254-255 (3) (144 SE2d 345) (1965). As to geographical limitation, the contract itself sets forth the counties, both in Georgia and neighboring states, from which the clinic draws its patients. The trial court found that the counties listed are all within a 30-mile radius of the clinic location and that consequently, a covenant not to compete within a 30-mile radius is reasonable to protect the clinic.

In *Rash*, supra at 325-326 (2), the Supreme Court also examined the respective bargaining positions of the parties and whether the restrictive covenants in issue worked a mutual, rather than a unilateral, advantage. Consideration of these factors draws into sharp focus the differences between professional partnership agreements and employment contracts generally. It weighs in favor of the enforceability of restrictive covenants in the former, and against their enforceability in the latter. The trial court correctly considered and applied this portion of the *Rash* analysis. The contracts of Drs. Pittman and Murphy are denominated employment contracts. These doctors, however, were shareholders in the P.A., and when they executed the agreements, they not only committed themselves to the restrictions but also derived a benefit by exacting the same restrictions from the approximately 35 other physician shareholders who executed identical contracts. The covenants obviously provided mutual advantages. As in *Roberts*, supra at 615-616, because the bargaining power of Drs. Pittman and Murphy was equal to that of those with whom they contracted, the agreements are more usefully viewed as medical partner-

ship agreements analogous to those in *Rash* than as traditional employment contracts. *Roberts*, supra at 616-617.

2. The other enumerations of error of Drs. Pittman and Murphy may be summarized by describing their broad contentions. The first of these includes several arguments founded on the basic premise that the phrase "otherwise reasonable," as used in *Rash*, supra, established a fourth element in the test for reasonableness of a restrictive covenant in employment contracts.

We agree with the trial court that this premise is untenable. The phrase refers to "the interests to be protected and the effects on both parties to the contract." *Rash*, supra at 323 (1). Consequently, the arguments made by Drs. Pittman and Murphy based on the need for more neurosurgeons in the Rome area, the impact on third parties of enforcement of the covenants, and various other arguments, are without merit.

We likewise find no merit in the contention of Drs. Pittman and Murphy that because the protected geographical territory includes a portion of the State of Alabama and Alabama law prohibits non-competition clauses in physician employment contracts, the restrictions in issue are not "otherwise reasonable." These are Georgia contracts, executed in Georgia by Georgia residents and covering the practice of medicine in Georgia, thereby distinguishing them from those in *Nasco, Inc. v. Gimbert*, 239 Ga. 675 (238 SE2d 368) (1977), cited by the doctors. The trial court correctly found that "the contracts at issue have as their very essence the practice of medicine physically located in Rome, Floyd County, Georgia. This Court concludes that Georgia was the state for performance of these contracts. [Cits.] The application of Georgia law renders the public policy and statutory law of Alabama irrelevant for the construction of these contracts. [Cits.]"

3. Drs. Pittman and Murphy also rely in several enumerations on their broad contention that the "richer record" in this case provides a basis for holding that these covenants are unenforceable despite the existence of previous Georgia case law, such as *Rash*, supra, to the contrary. We agree with the trial court that the issues raised in this appeal are controlled adversely to Drs. Pittman and Murphy by previously decided cases, and that even if the "richer record" emphasized by Drs. Pittman and Murphy exists, it does not demand a different result. Georgia case law, as well as that of other jurisdictions, has established that covenants such as the ones in issue do not conflict with medical ethical principles or Georgia law requiring informed consent or injure the public in general. See *Rash*, supra at 326 (restrictive covenant not void as against public policy because it limited patients' choice of physician within geographical area). See also *Shankman v. Coastal Psychiatric Assoc.*, 258 Ga. 294 (368 SE2d 753) (1988); *Karlin v. Weinberg*, 390 A2d 1161, 1168, n. 6 (N.J. 1978).

4. In Case No. A93A1526, the clinic appeals from that portion of the trial court's order finding that the restrictive covenants in the contracts of Dr. Herring and Drs. Naguszewski were void and unenforceable.

The restrictive covenants in the contracts of Dr. Herring and Drs. Naguszewski, who were not shareholders in the professional association, are identical to those in the contracts of the shareholder doctors except that the protected area lies within a 50-mile radius of the clinic, and the doctors may pay a smaller sum to secure the association's waiver of the restriction.

Although the trial court found that a 50-mile radius protected area was not per se unreasonable, see *McMurray*, supra at 255 (4), it found that in this case it was unreasonable and unenforceable, based on two factors. First, the 50-mile area exceeds the territory of the clinic's practice as described in the contract. Second, the 50-mile restriction was used only in the contracts of physicians who were not shareholders and whose bargaining position, therefore, was not equal to that of the clinic, necessitating stricter scrutiny of the restriction. *Rash*, supra. The record supports these findings.

We do not agree with the clinic that the trial court's obvious slip of the tongue in referring to stricter scrutiny as strict construction renders the standard of review employed "fundamentally wrong." It is clear from the authority cited by the trial court, as well as from its reasoning, that the correct standard was applied. Based on the same reasoning and authority, we affirm the trial court's ruling that the covenants in the contracts of Dr. Herring and Drs. Naguszewski are void and unenforceable. See generally *Osta v. Moran*, 208 Ga. App. 544, 546-547 (2) (430 SE2d 837) (1993).

5. No additional enumerations of error or argument having been raised in the cross-appeals, Case Nos. A93A1527 and A93A1528 are hereby dismissed.

*Judgment affirmed in Case Nos. A93A1525 and A93A1526. Appeals dismissed in Case Nos. A93A1527 and A93A1528. Beasley, P. J., and Cooper, J., concur.*

DECIDED OCTOBER 19, 1993 —
RECONSIDERATION DENIED NOVEMBER 4, 1993 

*Cook & Palmour, Bobby Lee Cook, Jr., Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom,* for Pittman and Naguszewski.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M. J. Webb,* for Harbin Clinic Professional Association.