A95A0006. McALPIN v. COWETA FAYETTE SURGICAL ASSOCIATES, P. C.

(458 SE2d 499)

ANDREWS, Judge.

McAlpin, a surgeon, appeals from the grant of Coweta Fayette

Surgical Associates, P. C.'s (Coweta)[1] motion for interlocutory injunction prohibiting McAlpin's competition with Walker, also a surgeon. This dispute arose when McAlpin left the employ of Coweta and the corporation, through Walker, sued to enforce a non-competition clause in McAlpin's employment contract. We affirm.

McAlpin was practicing in Michigan in 1993. He worked part-time for an insurance company evaluating appropriateness of care. In that capacity, he had telephoned Walker on a couple of occasions to discuss patient treatment and, in the course of these conversations, the two surgeons discussed McAlpin's coming to Newnan to become an employee of Coweta. Walker had practiced in the Newnan area for 12 years. The two doctors exchanged mutual visits, and Walker sent McAlpin a summary of the proposed agreement by which McAlpin would become an employee of Coweta. It included a two-year contract term, after which a partnership would be considered, as well as a non-competition clause within a thirty-five-mile radius of Coweta's Newnan office for a two-year period from the termination of the contract.

Coweta's main office was located in Newnan, Coweta County. Two of the hospitals in the ten-county area were located in Newnan, Newnan Hospital and Peachtree Regional Hospital. Coweta had a satellite office in Peachtree City, Fayette County. A new hospital had been approved for that area, and it was anticipated it would open in approximately three years.

When Walker had a written contract prepared by his attorney, he deleted the thirty-five-mile radius circle as the geographic area of the non-competition clause and, instead, specified ten counties: Coweta, Fayette, Fulton, Heard, Meriwether, Carroll, Clayton, Spalding, Troup, and Pike. Walker received the document from his attorney on September 15.

The proposed contract was sent by overnight carrier to McAlpin in Michigan on September 16, and picked up by him on September 17. The contract contained the following non-competition clause: "As a part of the consideration for this Agreement, unless the parties otherwise mutually agree in writing, (for a period of two (2) years from and after the termination date of this Agreement) Physician [McAlpin] shall neither compete with Employer (or Don C. Walker, M.D.) in the practice of medicine and surgery, nor otherwise engage in the practice of medicine and surgery, within the boundaries of any one or more of the following counties within the State of Georgia: [Counties specified as set out above.] For the purposes of enforcement

---

[1] Dr. Walker was the sole shareholder in his professional corporation. His wife worked as business manager of his practice. He employed one other doctor.

of this paragraph, the provisions hereof shall survive the termination date of this Agreement and be fully binding on Physician thereafter."

McAlpin discussed the contract with his Michigan attorney, who expressed some discomfort with the non-competition clause and advised McAlpin to contact a Georgia attorney. Instead, McAlpin spoke to Walker on the phone and the only change he requested was in the term of the contract specifying how much vacation could be taken at one time.

On September 29, Walker and McAlpin met to sign the contract. Both doctors agree that McAlpin expressed a lack of familiarity with the area during the ride to the hotel where the McAlpin family was to stay. Upon arriving at the hotel, Walker drew a very rough drawing of the counties' locations. It also indicated that DeKalb, Cobb, and Gwinnett, which were not included in the restricted area, were in the Atlanta vicinity. Testimony at the interlocutory hearing differed as to when McAlpin was shown an atlas showing the area, but both doctors agree it was shown to him, either before or shortly after the contract signing. At no point did McAlpin obtain his own map or make any inquiry of anyone else concerning the ten counties or the metropolitan Atlanta area.

McAlpin practiced with Coweta from December 1993 until he gave his notice on March 10, 1994, effective March 5, 1994. McAlpin then began seeing patients in the restricted area, using his home in Newnan as an operating base.

Coweta sued, alleging breach of the agreement and seeking an interlocutory injunction based on the restrictive clause. McAlpin counterclaimed, alleging slander and fraud in the inducement.

After conducting a hearing, the trial court entered its interlocutory injunction on July 13, 1994, finding that the restrictive clause was reasonable.[2] McAlpin appealed to the Supreme Court which transferred the matter here.[3]

1. "While a contract in general restraint of trade or which tends to lessen competition is against public policy and is void (1983 Ga. Const., Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2) a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld 'if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.'

---

[2] The injunction was modified on August 4, 1994, to allow McAlpin to serve as an emergency room physician at the two hospitals where Coweta also practiced, as well as continue being the doctor for the Coweta County jail, and to serve as an emergency room doctor in counties other than Coweta.

[3] *Pittman v. Harbin Clinic Professional Assn.*, 263 Ga. 66 (428 SE2d 328) (1993).

[Cit.] Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court [cit.], which considers ' "the nature and extent of the trade or business, the situation of the parties, and all the other circumstances." [Cits.]' [Cit.] . . . A three-element test of duration, territorial coverage, and scope of activity has evolved as a 'helpful tool' in examining the reasonableness of the particular factual setting to which it is applied. [Cit.]" *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).

Walker testified that, over a five-year period, he had averaged three-and-one-half surgeries a week. His patient list over that period contained 6,000 names, including patients he or his former doctor/ employee had seen who did not require surgery or were seen for primarily medical conditions. Walker testified that it was the custom in that locale for surgeons to also practice general medicine for their patients. Most of his patients were referred either by other doctors or Coweta patients. His patients included residents of all ten counties named in the non-competition clause. Fayette, Heard, Meriwether, and Pike counties had no general hospitals, and Heard County did not have either a hospital or doctor. Of the surgeries which Walker performed in 1993, patients came from nine of the ten named counties. It was Walker's intention that, by hiring McAlpin, Coweta could expand its practice in the eight counties other than Coweta and Fayette, and that, upon completion of the Fayette hospital, the practice would grow even more.

McAlpin brought no patients with him from Michigan and had no patient base except for that provided by Coweta. Coweta paid nearly $14,000 to move McAlpin and his family from Michigan, and in the three-month period that McAlpin worked for Coweta, he was paid $19,924.65, gross. McAlpin had access to Coweta's patient records and was provided with office space, supplies, nursing assistance, malpractice insurance, and other necessities of practice. Before the issuing of the injunction, McAlpin had performed surgery on at least one of Coweta's patients.

The 1990 census reflected a population of 1,169,000 in the ten-county restricted area, while the population of Cobb, DeKalb, and Gwinnett, which was not restricted, was 1,346,492.

2. As initially set out in *Rash v. Toccoa Clinic Medical Assn.*, 253 Ga. 322 (320 SE2d 170) (1984), there is a distinction between consideration of restrictive covenants in employer/employee situations as opposed to a partnership situation, with the former requiring a stricter scrutiny in determining the reasonableness of the restrictions. *Roberts v. Tifton Medical Clinic*, 206 Ga. App. 612, 615 (426 SE2d 188) (1992).

So evaluating the clause at issue, we consider McAlpin's conten-

tion that the ten-county geographical restriction is overbroad and not intended to protect Coweta's interests, but, instead, meant only to stifle competition. We disagree. As reflected above, Coweta had patients in all ten counties, although the bulk of its patients were from Coweta and Fayette counties. As fully explained by Walker, there was a newly approved hospital which he believed would expand Coweta's opportunities and patient base. As stated in *McMurray v. Bateman*, 221 Ga. 240, 255 (4) (144 SE2d 345) (1965), "[t]he territorial limitation of the covenant was, according to precedents set by this court, not too broad if the territory included was that throughout which the plaintiff generally practiced, although not necessarily in every part of the area included [cit.], including territory over which he had reasonable prospects of extending his practice. [Cits.]" There, the Supreme Court approved the restriction of medicine and surgery by a former doctor/employee within a 50-mile radius of Forest Park, Georgia, for a three-year period.

Similarly, in *Raiford v. Kramer*, 231 Ga. 757 (204 SE2d 171) (1974), the court approved of a covenant restricting the practice of ophthalmology by a former doctor/employee in the five-county metropolitan Atlanta area of Fulton, Clayton, Cobb, DeKalb, and Gwinnett counties for two years after termination of the contract.

Further supporting the conclusion of reasonableness here is the fact that McAlpin is not prevented from treating the entire patient base of Coweta, which was the failure of the covenant disapproved in *Dougherty &c. v. Greenwald &c.*, 213 Ga. App. 891, 893 (2a) (447 SE2d 94) (1994), where employee/accountants of a CPA firm were precluded from contacting any former client of the professional corporation and there was no geographical limit. Id. at 894 (2c).

Also, as specifically explained to him before he signed the contract, McAlpin could practice in the metropolitan area in counties not listed, such as Cobb, DeKalb, and Gwinnett, which had a larger population base than the ten-county area from which he was restricted. Compare *Osta v. Moran*, 208 Ga. App. 544, 546 (2) (430 SE2d 837) (1993), with *Smith v. HBT, Inc.*, 213 Ga. App. 560, 562 (2) (445 SE2d 315) (1994).

*Pittman v. Harbin Clinic Professional Assn.*, 210 Ga. App. 767, 771 (4) (437 SE2d 619) (1993), relied upon by McAlpin, is distinguishable. There, this court upheld a one-year restriction within a 30-mile radius of the clinic's location by former partners of a 50-doctor practice. It struck, however, the restriction as to former employee/doctors, because the radius was 50 miles, instead of 30, and the relative bargaining positions were not equal. Treating employees more harshly than partners was properly found unreasonable.

We believe the situation here is more comparable to that in *Dominy v. Nat. Emergency Svcs.*, 215 Ga. App. 537 (2) (451 SE2d

472) (1994). There, Dominy was an employee/doctor of the corporation, which contracted with hospitals to provide emergency room physicians. Dominy was assigned to Memorial Hospital and Manor in Bainbridge. His contract restricted him, for a period of two years after termination of the contract, from performing similar services at any hospital where he had worked for the corporation. The clause was found reasonable because "[h]e is not precluded from all practice of medicine, . . . nor is he prohibited from providing emergency medical services . . . to other hospitals in the immediate vicinity."

Similarly, here, McAlpin is not restricted from practicing medicine or surgery in other counties in the metropolitan area, nor is he precluded in treating patients he saw while with Coweta as long as that is done in counties other than the ten specified.

We conclude that the clause was properly found reasonable by the court below.

3. There was no abuse of discretion in the trial court's grant of the interlocutory injunction. *Benton v. Patel*, 257 Ga. 669, 672 (1) (362 SE2d 217) (1987).

4. McAlpin's remaining enumerations of error are without merit. *Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 26, 1995 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Glass, McCullough, Sherrill & Harrold, John M. Stuckey, Jr., Geoffrey H. Cederholm III, Bryan A. Downs*, for appellant.
*Rosenzweig, Kam, Jones & MacNabb, Joseph P. MacNabb*, for appellee.