A96A1414, A96A1522. DELLI-GATTI v. MANSFIELD;
and vice versa.
(477 SE2d 134)

BIRDSONG, Presiding Judge.

In Case No. A96A1414, appellant/defendant Kevin L. Delli-Gatti, M.D. appeals from the order of the superior court declaring unenforceable the non-compete clause in a medical services agreement, entered between appellant and appellee/plaintiff Kathy Mansfield, M.D. In Case No. A96A1522, cross-appellant Dr. Mansfield appeals from the superior court's order, asserting the trial court erred in failing to find the non-compete clause unenforceable because of abandonment of agreement and breach of the agreement by cross-

appellee Dr. Delli-Gatti.

This is a suit for declaratory judgment brought by appellee Dr. Mansfield, praying for a declaration of rights as to the enforceability of a non-compete clause in a medical services agreement. The non-compete clause provided the following upon termination of the medical services agreement or the employee relationship created thereby: "Dr. Mansfield . . . covenants that she shall not provide pediatric services or other medical care as a physician within Upson County or provide said services at the Upson Regional Medical Center for the twelve (12) months immediately following the said termination." Subsequently, Dr. Mansfield exercised her contractual right to give notice and terminate the agreement.

The trial court made the following pertinent findings of fact: "[The] defendant had intended to prevent plaintiff from competing with him in the practice of pediatrics, but . . . the language inserted in the [non-compete clause] not only prevented plaintiff from practicing pediatrics, but also precluded plaintiff from practicing medicine of any type, in any branch, any specialty or no specialty at all. The evidence thus conclusively established that the interest of the employer to be protected was solely that of the practice of pediatrics. The covenant . . . was drawn by the attorney for the employer, and imposed the restriction on plaintiff, unilaterally, stemming[ ] . . . from the disparate bargaining positions of the parties, there being no restrictions on the employer, since he could, by the terms of the contract, terminate it, continue to practice pediatrics, and preclude plaintiff from practicing any type of medicine in the described territory. This prohibition . . . of the practice of any type of medicine, was not reasonably necessary for the protection of the defendant, and was therefore overbroad and unenforceable." *Held*:

### Case No. A96A1414

1. The executed agreement created a contract of employment with a future option to form a partnership in the event certain conditions were met and the partnership terms were agreeable to both parties; at the time the agreement was terminated no partnership had been formed. Unlike a contract in general restraint of trade, a restrictive covenant in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded upon valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. Whether the imposed restraint in an employment contract is reasonable is a question of law for court determination, which considers the nature and extent of the trade or business, the situation of

the parties, and all the other relevant circumstances. *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529); *Dougherty, McKinnon &c. v. Greenwald, Denzik &c.*, 213 Ga. App. 891, 893 (2) (447 SE2d 94). A " ' "helpful tool" ' " in determining the reasonableness of a particular restraint provision is to apply the three-element test of duration, territorial coverage, and scope of activity. Id. In considering the reasonableness of restrictive covenants in an employer/employee agreement, strict appellate scrutiny is required; whether the restraint was reasonable presents an issue of law. *McAlpin v. Coweta &c. Assoc.*, 217 Ga. App. 669, 672 (1), (2) (458 SE2d 499).

2. The record reveals that, while completing her residency in pediatrics, appellee was contacted by representatives of the local Upson County hospital and invited to come to the county to practice medicine; appellee was given three separate career options, only one of which would have resulted in her entering a medical services agreement with and becoming an employee of appellant. Thus, even if her negotiations failed, appellee still had other professional employment options open to her. Further, after appellant's attorney drafted the agreement, appellee reviewed the document and successfully negotiated the amendment of the document so as to change favorably the vacation time to be allotted and the length of time required to obtain a partnership option, and to add certain health and disability insurance benefits. Moreover, although the non-compete clause appeared in the original draft of the agreement, there exists no evidence of record that appellee ever attempted to negotiate this provision or that she objected to its inclusion in the agreement. In fact, appellee testified that appellant had made all the changes to the agreement which she had requested. Appellee admitted in court that she had read and understood the terms of the agreement, and by executing the agreement had agreed to abide by the terms of the non-compete clause. Assuming without deciding whether, as found by the trial court, some degree of disparate bargaining position existed between appellant and appellee, we are satisfied that it was not so significant as to impair appellee's ability to negotiate the terms of the medical services agreement effectively.

3. The duration and territorial coverage limits of the non-compete clause were not unreasonable per se; the elements of duration and territorial coverage were specific and did not deter Dr. Mansfield's ability to determine with certainty the area within which her post-employment activities were restricted and the exact duration of the restriction. The controlling issue is whether the trial court erred in concluding the non-compete clause, because of the scope of its coverage, "was not reasonably necessary for the protection of the defendant" and was overbroad, unreasonable, and unenforceable under the

attendant circumstances.

The pertinent portion of the non-compete clause purports to limit, within Upson County, Dr. Mansfield's practice of not only pediatrics but of all "other medical care as a physician." In determining reasonableness, consideration must be given to the employee's right to earn a living. The covenant not to compete was not so restrictive as to deprive Dr. Mansfield of her right to earn a living practicing medicine, except in Upson County for a period of 12 months.

Regarding the provision in the covenant not to compete restricting appellee's use of the Upson Regional Medical Center, the parties in this case have neither argued nor provided citations of authority as to the effect of such a provision, and the record is devoid of any detailed information regarding the location, if any, of other hospitals or medical centers in the counties immediately surrounding Upson County. Thus, on appeal any issue as to the unreasonableness of the provision limiting the use of the medical center has been abandoned. Court of Appeals Rule 27 (c) (2).

Viewing the non-compete clause in its totality, we find it reasonable in regard to its relatively limited duration (for 12 months immediately following termination); further, the clause does not limit appellee from practicing any form of medicine and treating any person, whether or not a former patient of appellant, when such medical care is provided other than in Upson County. (Note: Appellant also continues to maintain an active practice in both Pike and Lamar Counties.) Yet in regard to the practice of pediatrics or the providing of medical care as a physician within the boundaries of Upson County, it is very restrictive. Nevertheless, the record reflects that while appellant was engaged in the practice of pediatrics and almost exclusively treated infants, children, and adolescents, he also would occasionally treat people older than age 17. Further, appellant testified that because certain other doctors practicing in the county, although not pediatricians, accepted children as patients they were in business competition with him. Appellee also conceded that on occasion, while practicing with appellant, she would engage in general practice by treating adult patients.

In *Puritan/Churchill &c. Co. v. Eubank*, 245 Ga. 334, 335 (265 SE2d 16), it was held that "language which restricts employees from activities in a much more limited fashion than is necessary for the protection of the employer will not withstand the reasonableness test so as to uphold the covenant." Accord *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265); *Jarrett v. Hamilton*, 179 Ga. App. 422, 424 (1) (346 SE2d 875). "Since restrictive covenants must be reasonable in this regard as well as strictly limited in time and territorial effect, a covenant failing in reasonableness for any of these three reasons cannot be upheld." *Puritan/Churchill*,

supra. It has been broadly held that one of the adverse effects of contracts in unreasonable restraint of trade is that the unreasonable covenants therein " 'tend to deprive the public of services of (citizens) in the employments and capacities in which they may be most useful to the community as well as themselves.' " (Citation omitted.) *Vortex Protective Svc. v. Dempsey*, 218 Ga. App. 763, 765 (2) (463 SE2d 67). However, a covenant prohibiting doctors from " 'practicing medicine' " within a 30-mile radius of a clinic's location for a period of one year following employment has been upheld in the face of a challenge that the scope of the activity prohibited thereby was overbroad. *Pittman v. Harbin Clinic Professional Assn.*, 210 Ga. App. 767, 769 (1) (437 SE2d 619); see also *McMurray v. Bateman*, 221 Ga. 240 (3) (144 SE2d 345). In upholding a non-compete covenant not to engage in the practice of medicine or surgery within a radius of 25 miles of the City of Toccoa, the Supreme Court observed: "If it be argued that the enforcement of this restrictive covenant would be contrary to public policy because it would limit the right of potential patients in the Demorest and Habersham County area to avail themselves of [the doctor's] services, it can be argued with at least equal conviction that this would afford countless other people in other areas, both in and outside of the state, the opportunity to have a physician in their areas. There is no reason to conclude that the obstetrical and gynecological needs of persons within a 25-mile radius of Toccoa are any greater than in many other areas of this and other states, nor is there any reason to conclude that the need for the [doctor's] services . . . is sufficient to outweigh the law's interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations." *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 326 (3) (320 SE2d 170). The terms of the non-compete clause in this case are not as restrictive as those in *McAlpin v. Coweta &c. Assoc.*, supra, citing *Dominy v. Nat. Emergency Svcs.*, 215 Ga. App. 537 (2) (451 SE2d 472). Additionally, the local public could still visit Dr. Mansfield should she elect to practice in the counties adjoining Upson County. Finally, although not controlling to the disposition of this case, it appears that Dr. Mansfield wishes to have the non-compete clause declared unenforceable so she can practice pediatrics in Upson County, not so she can primarily practice other branches of medicine there. Yet, she contends, inter alia, that the non-compete clause is too broad because it totally restricts her from engaging in other medical practice in Upson County. Suffice it to note that the specific portion of the non-compete clause which she asserts is too expansive does not appear to be the real cause of her profession delimitation.

The precedent of *Darugar v. Hodges*, 221 Ga. App. 227 (471 SE2d 33); *Dougherty, McKinnon &c. v. Greenwald, Denzik &c.*, supra; and *Osta v. Moran*, 208 Ga. App. 544 (430 SE2d 837) is not controlling, as

the restrictive covenants and attendant circumstances therein are substantively distinguishable. Rather, we find *Rash*, supra, and *McAlpin*, supra, to be controlling and that the trial court erred in finding the non-compete clause to be unreasonable and unenforceable.

### Case No. A96A1522

4. " 'Parties may by mutual consent abandon a contract so as to make it not thereafter binding.' " (Citations omitted.) *Tidwell Homes v. Shedd Leasing Co.*, 191 Ga. App. 892, 894 (1) (383 SE2d 334). The trial court found, as fact, that the evidence did not indicate the entire contract had been abandoned by the parties. The evidence does not compel a contrary finding. Cross-appellant utilized the office facilities provided and accepted compensation in excess of that required by the contract without objection; she did not timely attempt to effect a dissolution of the contract nor to assert, prior to her notice of termination, that the contract with cross-appellee had been abandoned. Cross-appellant's intent to continue performance under the terms of the contract also is evidenced by her tender of written notice of termination of employment with cross-appellee as "authorized by the contract of employment between us." Additionally, we find that by her course of conduct cross-appellant waived her right to assert an abandonment of the contract of employment at issue. Compare *Crotty v. Crotty*, 219 Ga. App. 408, 412 (3) (465 SE2d 517) and cases cited therein; *Mauldin v. Weinstock*, 201 Ga. App. 514, 520 (4) (411 SE2d 370).

The trial court implicitly found there existed no breach of contract by failing to comply with the contractual requirement for equal burden of time devoted to patient care. The trial court has exclusive authority to weigh evidence and judge witness credibility; we find no basis in the record for reversing this determination. Further, cross-appellant's conduct also resulted in a waiver of right to assert a breach of contract claim. *Crotty*, supra; *Mauldin*, supra. Cross-appellant did not timely assert claims either of contract abandonment or of contract rescission. She not only submitted a letter of termination as authorized under the terms of the contract, but also accepted more than all monetary benefits which the contract afforded. "[She] cannot enjoy the benefits afforded by the contract and at the same time claim that the agreement was breached as to [her]." *Rash*, supra at 327 (5). Cross-appellant's enumerations of error are without merit.

*Judgment affirmed in Case No. A96A1522. Judgment reversed in Case No. A96A1414. Beasley, C. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 17, 1996 —
RECONSIDERATION DENIED OCTOBER 7, 1996 —

*Don E. Snow*, for appellant.

*Adams, Barfield, Dunaway & Hankinson, Ronald Barfield, Nancy C. Barfield*, for appellee.