# CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Clara Belle Wheeler

v.

Fredericksburg Orthopaedic
Associates, Inc., and
Mid-Atlantic Health Alliance, Inc.

February 5, 1998

Case No. CH98-27

BY JUDGE JOHN W. SCOTT, JR.

This matter came before the Court on January 22, 1998, upon the Petition of Clara Belle Wheeler, M.D., requesting that this Court enter a temporary injunction prohibiting the Defendants, Fredericksburg Orthopaedic Associates, Inc., and Mid-Atlantic Health Alliance, Inc., (hereinafter referred to as "FOA" and "MAHA" respectively) from interfering with her engaging in the practice of medicine or otherwise acting in the capacity of a "professional" within thirty-five miles of FOA's Fredericksburg, Virginia, office. The Petitioner requests that this temporary injunction remain in full force and effect until this Court renders a decision in reference to her Declaratory Judgment action as to the enforceability of a covenant not to compete which was a part of her original employment contract with FOA and MAHA.

## Statement of Facts

On May 1, 1995, the Petitioner, Wheeler, and the Defendants, FOA and MAHA, entered into an employment agreement whereby the "Employer wishes to employ the Employee for a period of twelve months to assist the employer in the practice of medicine in the City of Fredericksburg, Virginia, and the surrounding area, and the employee wishes to be so

employed." (Hearing Exhibit 1, p. 1.) According to Section Two, "Term," the employee was to be employed for a period of twelve months beginning August 1, 1995, and continuing until July 31, 1996, unless sooner terminated. Section Nine, "Future Employment Agreement," of the contract between these parties contemplates that the employee may be employed by FOA and MAHA after the twelve-month term of employment. Every provision in reference to a new employment agreement or an extension of this agreement contained in this section provides that such an agreement shall be "in writing." (Hearing Exhibit 1, p. 5.)

It is undisputed that the Petitioner's sub-specialty in the field of orthopaedic medicine deals with the hand and microsurgery. There is no other physician in the Fredericksburg, Virginia, area who engages in this type of practice. When emergencies occur which require a physician with Dr. Wheeler's sub-specialty in the Fredericksburg area and the Petitioner is not available, these patients must be transported immediately to either Washington, D.C., Richmond, or Charlottesville, Virginia, cities more than fifty miles from Fredericksburg.

The employment agreement between the parties requires that the Petitioner become "board certified" in the field of orthopaedic medicine. The Petitioner took the written portion of the certification test on two separate occasions during her employment with FOA and did not pass.

The Petitioner, Wheeler, has remained an employee of the Defendants from July of 1995 to the present. Dr. Wheeler does not recall that there was any discussion in reference to the renewal of the employment agreement around July 31, 1996, when the agreement, by its terms, terminated. Dr. Moss, one of the owners and members of the board of FOA, recalls that there was no formal discussion in reference to the renewal of the agreement but testified that FOA continued to fulfill all of its requirements as listed in the agreement up to the present time.

After the Petitioner notified the Defendants that she had not passed her "boards" a second time, the Board of Directors of FOA decided to terminate the Petitioner during the fall of 1997. The Defendants advised Dr. Wheeler that her services would no longer be needed after January 31, 1998. During the months of December 1997 and January 1998, at the Defendants' insistence, the Petitioner was forced to retain the *Free Lance Star*, a newspaper of general circulation in the Fredericksburg, Virginia, area, to run an advertisement to the effect that she was leaving FOA. At the same time, FOA ran a larger advertisement in the same newspaper stating that the files of all of the Petitioner's patients would remain at FOA. (See Hearing Exhibit 2.)

The Petitioner was advised by representatives of the Defendants during the fall of 1997 that FOA had sought advice from their attorneys and that they fully intended to enforce the covenant not to compete as stated in the original employment contract between the parties. The Petitioner expressed a desire to continue to practice medicine in the Fredericksburg, Virginia, area given her specialty and the fact that her elderly mother, who resides in Fredericksburg, requires her daily assistance.

## Opinion

The only issue before the Court at this time is whether or not a temporary injunction should be issued to forbid the Defendants from interfering with the Petitioner's practicing medicine within a thirty-five mile radius of Fredericksburg, Virginia, after February 1, 1998, and until the declaratory judgment action in this matter is ultimately decided. A temporary injunction should only be issued after a consideration of the following factors:

(1) Whether or not the Petitioner would suffer an irreparable harm if the injunction was not entered;

(2) Whether or not the Defendants would suffer an irreparable harm if the injunction was issued;

(3) Whether or not there is a likelihood that the Petitioner would prevail on the merits of the case; and

(4) Whether or not the public would suffer an irreparable harm if the injunction was not issued.

In this case, the Petitioner testified that if she could not practice as a "professional" or practice medicine within a thirty-five mile radius of the City of Fredericksburg, she would in fact suffer an irreparable harm. Given the language of the employment agreement between the parties, the Petitioner could not pursue her profession as a medical doctor, irrespective of specialty, within thirty-five miles of the City of Fredericksburg. Consequently, the Petitioner would be deprived of earning any livelihood within thirty-five miles of the City of Fredericksburg unless she worked as a laborer or in a position that might be classified as "semi-skilled." This Court finds that such a requirement is an irreparable harm to the Petitioner.

It is important to note that the Defendants fired the Petitioner. As of February 1, 1998, the Defendants, by their own actions, would be deprived of the Petitioner's services, expertise, and net profit. Therefore, the only damages that the Defendants could possibly suffer would be their loss of profit through direct competition with the Petitioner. It is undisputed that the Petitioner engages in a specialty of orthopaedic surgery that is not

practiced by any of the remaining members at FOA. Therefore, since there is absolutely no evidence before the Court as to any anticipated damages that FOA would suffer due to direct competition with the Petitioner beginning on February 1, 1998, the Court finds that there is no irreparable harm to the defendants if a temporary injunction was issued.

This Court has previously stated that the parties have agreed that the Petitioner's sub-specialty in the field of orthopaedic medicine is unique and is only available through other physicians practicing in the Washington, D.C., Richmond, or Charlottesville area. Therefore, in this particular case, the residents of the Fredericksburg, Virginia, area would suffer if the Petitioner was not able to practice her sub-specialty of medicine within thirty-five miles of the City of Fredericksburg. Therefore, the Court finds that the public would suffer an irreparable harm if the Petitioner was not allowed to practice medicine within a thirty-five mile radius of the City of Fredericksburg.

Finally, the Court must consider the issue as to whether or not there is a likelihood that the Petitioner would prevail on the merits. The Court has previously noted that the employment agreement between the parties specifically calls for any new agreement or any modification of its terms to be reduced to writing. No new written agreement has been submitted to the Court. Furthermore, the Court notes that counsel for the Defendants acknowledged that there was no provision in the initial employment contract that allowed an oral extension of the agreement. In addition, if the initial employment agreement did in fact terminate on July 31, 1996, as it specifically states, the requirement that the Petitioner not practice medicine within a thirty-five mile radius of the City of Fredericksburg for eighteen months would expire on January 31, 1998.

The Defendants contend that the initial employment agreement was extended because of the actions of the parties, *i.e.* the Defendants continued to provide all of the benefits to the employee that were required under the contract to the present time. The Defendants further contend that the Petitioner acquiesced in this extension by simply continuing to receive these benefits. The Defendants have asked the Court to consider the status of the law as enunciated by the Court of Appeals for the State of Texas. In the case of *Fenno v. Jacobe*, 657 S.W.2d 844 (1983), the Texas Court held that when a person is employed pursuant to an employment agreement that subsequently expires, and, the employee continues to work under the same terms and conditions as before, the employment agreement is renewed for a similar period of time. The Defendants' position is supported in the case of *Styles v. Lyon*, 86 A. 604 (1918), by the Supreme Court of Errors of Con-

necticut. Finally, the Defendants rely on the case of *Delli-Gath v. Mansfield*, 477 S.E.2d 134 (1996), in which the Court of Appeals of Georgia upheld the enforcement of a covenant not to compete which was terminated by an employee physician during the period when the contract was clearly enforceable by its terms. The Court in *Delli-Gath* recognized that while such contracts were a restraint on trade, the clause not to compete for a twelve-month period within a given county was reasonable and enforceable. This same issue has been addressed by the Circuit Court of Warren County, Virginia, in the case of *Shenandoah Chiropractic, Inc. v. Berman*, 40 Va. Cir. 297 (1996). The Circuit Court of Warren County held that:

> The employment contract in this case is subject to the statute of frauds, because it provides for employment for eighteen months. Section 11-2(8) Va. Code; and *Falls v. Virginia State Bar*, 240 Va. 416 (1990). The statute of frauds prevents the implication of a new contract where the term to be impliedly extended exceeds one year.

The Supreme Court of Virginia in *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286 (1992), has held that, since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint of trade, and it is to be carefully examined and strictly construed before the covenant will be enforced. Under the facts and circumstances of this case, the employment contract between these parties, by its terms, ended just under eighteen months ago. The Defendants seek to apply this contract at the present time acknowledging that no terms or conditions have been added or deleted. Under these circumstances, the statute of frauds clearly applies. Consequently, the Court finds that there is a likelihood that the Petitioner will prevail on the merits.

It is therefore adjudged, ordered, and decreed that a temporary injunction shall be issued against Fredericksburg Orthopaedic Associates, Inc., and Mid-Atlantic Health Alliance, Inc., prohibiting them from interfering with the Petitioner's, Clara Belle Wheeler's, efforts to practice medicine within a thirty-five mile radius of the City of Fredericksburg, Virginia, upon the posting of a bond in the amount of $25,000.00. It should be noted that the Court requested the Petitioner and the Defendants to submit financial data concerning the amount before the close of business on Friday, January 23, 1998. The Petitioner submitted an affidavit pursuant to the Court's request. No information was received by the Court from either of the Defendants. The bond takes into account the fact that the Defendants fired the Petitioner effective February 1, 1998. Therefore, the Defendants

could claim damages only with respect to lost profits from direct competition. Since there has been no direct competition between the parties, the amount of any such loss is purely speculative. The bond shall be posted in the Clerk's office for the City of Fredericksburg. Counsel for the Petitioner shall advise counsel for the Defendants as to the date the surety or cash bond is posted. The temporary injunction shall be effective as of that date.